[No. 41892-4-II.   Division Two.   January 16, 2013.]

LEIGH ANN SHOFFNER, *Appellant*, v. THE STATE OF WASHINGTON ET AL., *Respondents*.

Richard J. Davies (of *Kraft Palmer Davies PLLC*), for appellant.

Robert W. Ferguson, Attorney General, Catherine Hendricks, Senior Counsel, and David C. Pearson and Richard A. Fraser III, Assistants, for respondents.

¶1 PENOYAR, J. — Leigh Ann Shoffner allegedly suffered injuries when she twisted her knee while walking from an

employee-designated parking lot to the vessel on which she was scheduled to start her shift as an able-bodied seaman. She now appeals the trial court's order granting summary judgment to the State of Washington and Victoria Rapid Transit Inc. and dismissing her claims brought under maritime law. Shoffner argues that the trial court erred by concluding that she was not acting in the course of employment at the time she suffered her alleged injury. Shoffner twisted her knee while walking down a public sidewalk between her vehicle and the vessel. She failed to establish that her employer controlled this area. Additionally, she was not receiving a travel stipend and she was not under the Washington State Ferries' (WSF) direct supervision at the time of her alleged injury. Accordingly, we hold that Shoffner was not acting under the course of her employment at the time of her alleged injury and affirm the trial court.

## FACTS

¶2 Beginning on May 1, 2009, the Hood Canal Bridge was closed for repairs for several weeks. To accommodate the resulting transportation difficulties for the general public, the Washington State Department of Transportation (WSDOT) offered a fare-free, passenger-only ferry service across the Hood Canal between Lofall in Kitsap County and South Point in Jefferson County. To operate the ferry service, WSF entered into a charter agreement with Victoria Rapid Transit. Victoria Rapid Transit supplied two vessels and a master/operator for each vessel, and WSF provided an advisory master and two deckhands for each vessel.

¶3 Northwest Wesley Way leads to the Lofall dock. During this time period, the portion of Northwest Wesley Way that lies west of its intersection with Ferry Street, toward the dock, was restricted to transit and local traffic only. Motorists were not allowed to pick up or drop off

passengers at the terminal; instead, buses ran every 15 minutes from a nearby park-and-ride lot to the terminal. To enforce the limited access, the WSDOT made arrangements to place a Washington State Patrol vehicle and officer at the intersection.[1] Employees could not drive their personal vehicles past this intersection.

¶4 Because bus service between the terminal and the park-and-ride lot began at 3:30 AM and ended at 10:30 PM, WSDOT installed four overhead light fixtures on Northwest Wesley Way. To the west of the Ferry Street/Northwest Wesley Way intersection, WSF set up an area for the buses to pick up and drop off passengers at the terminal, placed cones along the road, and repainted road lines. The State agreed that it "shall be responsible only for that extra maintenance and repairs of the local agency's [Kitsap County's] roads or streets occasioned by this project use." Clerk's Papers (CP) at 381.

¶5 WSF rented a parking lot on Northwest Wesley Way. The parking lot was closed to the general public. WSF employees were instructed to park in the lot, place "on-duty" signs in the windows of their vehicles, and walk from the parking lot to the Lofall Dock. CP at 269.

¶6 Shoffner, who lived in Poulsbo, accepted a temporary assignment as an able-bodied seaman on the Lofall-South Point ferry service. She was scheduled to work Sunday through Thursday, from 5:45 AM to 1:45 PM. WSF did not pay Shoffner for travel time or mileage.

¶7 On May 6, 2009, Shoffner parked her car at the employee parking lot on Northwest Wesley Way. She posted her on-duty employee parking permit in the window of her vehicle and wore her WSF uniform. She walked downhill on the sidewalk to board the ferry, past the Washington State Patrol vehicle and officer, and at approximately 5:30-5:40 AM, allegedly stepped into a depression in the sidewalk and twisted her knee.

---

[1] Although the road was closed, it remained open for local access.

¶8   Shoffner brought a claim for maintenance and cure. WSF rejected her claim. Shoffner then filed a lawsuit against WSF and Victoria Rapid Transit to collect maritime remedies, including maintenance and cure; general damages for unseaworthy vessel; and negligence under the Jones Act, 46 U.S.C. § 30104. Both parties moved for summary judgment on the issue of whether Shoffner was in the course of employment at the time of her injury, agreeing that no disputed issues of material fact existed. The trial court granted WSF and Victoria Rapid Transit's motion for summary judgment and dismissed Shoffner's claims. Shoffner appeals.

## ANALYSIS

¶9   The only issue on appeal is whether the trial court erroneously granted WSF and Victoria Rapid Transit's motion for summary judgment and dismissed Shoffner's cause of action. Shoffner contends that the trial court erroneously concluded that she was not acting in the course of employment at the time she suffered her alleged injury. Because Shoffner did not receive a travel stipend, was not under direct supervision of WSF at the time of her alleged injury, and was walking on a public sidewalk not controlled by her employer, we hold that Shoffner was not acting in the course of employment when she suffered her alleged injury.

I. STANDARD OF REVIEW

¶10   We review an order for summary judgment de novo, performing the same inquiry as the trial court. *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 708, 153 P.3d 846 (2007); *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We consider all facts in the light most favorable to

the nonmoving party. *Jones*, 146 Wn.2d at 300. Summary judgment is proper only if reasonable persons could reach but one conclusion from the evidence presented. *Bostain*, 159 Wn.2d at 708.

¶11 The moving party bears the initial burden of showing the absence of an issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The nonmoving party cannot merely claim contrary facts and may not rely on speculation, argumentative assertions that unresolved factual issues remain, or affidavits considered at face value. *Meyer v. Univ. of Wash.*, 105 Wn.2d 847, 852, 719 P.2d 98 (1986).

## II. MARITIME LAW

¶12 Both common law and statutory federal maritime law govern maritime actions brought in state courts. *Clausen v. Icicle Seafoods, Inc.*, 174 Wn.2d 70, 76, 272 P.3d 827, *cert. denied*, 133 S. Ct. 199 (2012). "Injured seamen do not qualify for state or federal work compensation for on-the-job injuries." *Clausen*, 174 Wn.2d at 76.

¶13 Under maritime common law, when a seaman becomes ill or injured "in the service of a vessel," the vessel owner must pay the seaman (1) "maintenance," a daily subsistence allowance, and (2) "cure," medical treatment. *Tuyen Thanh Mai v. Am. Seafoods Co.*, 160 Wn. App. 528, 538, 249 P.3d 1030 (2011). "[A] seaman need not present any proof of negligence or fault on the part of [the] employer, nor must [he or] she prove a causal nexus between employment and injury to establish [his or] her entitlement to maintenance and cure." *Tuyen Thanh Mai*, 160 Wn. App. at 539. Any ambiguities or doubts regarding payment of a seaman's entitlements must be resolved in the seaman's favor. *Dean v. Fishing Co. of Alaska*, 166 Wn. App. 893, 898-99, 272 P.3d 268 (2012) (citing *Vaughan v. Atkinson*, 369 U.S. 527, 532, 82 S. Ct. 997, 8 L. Ed. 2d 88 (1962)), *review granted*, 175 Wn.2d 1017 (2012).

¶14 The Jones Act created a statutory cause of action for negligence. *Clausen*, 174 Wn.2d at 80. Under the Jones Act, 46 U.S.C. § 30104:

> A seaman injured *in the course of employment* . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

(Emphasis added.) An employer's liability under the Jones Act is limited to "injuries negligently inflicted on its employees by its 'officers, agents, or employees.' " *Hopson v. Texaco, Inc.*, 383 U.S. 262, 263, 86 S. Ct. 765, 15 L. Ed. 2d 740 (1966) (quoting former 46 U.S.C. § 51 (1946)). The Jones Act " 'is entitled to a liberal construction to accomplish its beneficent purposes.' " *Daughenbaugh v. Bethlehem Steel Corp., Great Lakes S.S. Div.*, 891 F.2d 1199, 1204 (6th Cir. 1989) (quoting *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 790, 69 S. Ct. 1317, 93 L. Ed. 1692 (1949)). We analyze both of Shoffner's claims jointly because the phrase "in the service of the ship" for maintenance and cure coverage is the same as the phrase "in the course of employment" for coverage under the Jones Act. *Braen v. Pfeifer Oil Transp. Co.*, 361 U.S. 129, 132-33, 80 S. Ct. 247, 4 L. Ed. 2d 191 (1959).[2]

III. COURSE OF EMPLOYMENT/SERVICE OF THE SHIP

¶15 Shoffner contends that she was acting in the course of employment at the time she suffered her alleged injury because she was (1) following her employer's orders, (2) walking along the only practical route from her vehicle to the vessel, (3) walking in an area that was under her employer's exclusive control, and (4) acting for her employer's benefit. In contrast, WSF and Victoria Rapid Transit

---

[2] Shoffner also brought a claim of unseaworthiness. Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441, 121 S. Ct. 993, 148 L. Ed. 2d 931 (2001).

contend that Shoffner was "only on duty when she was aboard the vessel during her shift."[3] Resp'ts' Br. at 30. We conclude that under these circumstances, Shoffner was not acting in the course of her employment at the time of her alleged fall.

¶16 In determining whether a seaman is acting in the "course of employment," cases distinguish between "blue-water" and "brown-water" seamen. Blue-water seamen "live aboard a vessel by necessity in most instances by virtue of the vessel's activity in offshore or distant waters." *Price v. Connolly-Pac. Co.*, 162 Cal. App. 4th 1210, 1214, 76 Cal. Rptr. 3d 872 (2008). Blue-water seamen are generally considered to be on duty even while on shore leave. *See Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724, 733, 63 S. Ct. 930, 87 L. Ed. 1107 (1943) ("To relieve the shipowner of his obligation in the case of injuries incurred on shore leave would cast upon the seaman hazards encountered only by reason of the voyage."). Thus, the shipowner in *Aguilar* was liable for maintenance and cure to a blue-water seaman who, having left his vessel on authorized shore leave, was injured while crossing the necessary route to his ship. 318 U.S. at 725, 736; *see also Warren v. United States*, 340 U.S. 523, 524, 529-30, 71 S. Ct. 432, 95 L. Ed. 503 (1951) (holding that blue-water seaman was in the service of the ship and, thus, entitled to maintenance and cure when he was injured at a dance hall while on shore leave); *Ellis v. Am. Haw. S.S. Co.*, 165 F.2d 999, 1001 (9th Cir. 1948) (concluding that seaman was acting in the course of employment when he was injured diving into a pool while on shore leave).

¶17 Brown-water seamen, also known as "commuter seamen," commute to and from their place of employment but are not required to live aboard the vessel where they are employed. *Price*, 162 Cal. App. 4th at 1214. In contrast

---

[3] WSF and Victoria Rapid Transit assert that "[i]t is undisputed that Ms. Shoffner is a seaman. Had her injury occurred aboard the vessel when she was on duty, WSF would not dispute her claim for benefits under maritime law." Resp'ts' Br. at 39.

to the expansive on-duty status of blue-water seamen, courts consider a number of factors to determine when brown-water seamen are acting in the course of employment. Shoffner relies on *Pensiero v. Bouchard Transportation Co.*, 2007 WL 3353481, 2007 U.S. Dist. LEXIS 83535 (E.D.N.Y. Nov. 10, 2007), a case in which the court concluded that a brown-water employee was acting within the course of his employment when he fell and broke his foot while crossing another ship to board his employer's vessel. For the *Pensiero* court, important factors were that (1) the employee was on a direct route to resume his duties on the vessel, (2) the employee would have been subject to discipline if he did not arrive, and (3) the employee's return was for both his and the vessel owner's benefit. 2007 WL 3353481, at *4, 2007 U.S. Dist. LEXIS 83535, at *11. Other factors supporting a finding of on-duty status are whether the seaman was under vessel owner supervision when injured, *see Rannals v. Diamond Jo Casino*, 265 F.3d 442, 449 (6th Cir. 2001); whether the vessel owner owned or had control over the injury site, *see Rodriguez v. Trump Casino*, No. 2:02 CV 254, 2011 WL 467050, at *5, 2011 U.S. Dist. LEXIS 11346, at *13 (N.D. Ind. Feb. 4, 2011) ("[I]njuries that occurred on the employer's property while performing work or traversing a third party's property within a reasonable time before or after work to access an employer provided parking lot have been held as being within the course of employment as a matter of law . . . ."); and whether the seaman received a travel stipend, *see Rannals*, 265 F.3d at 449. These factors tend to show that the seaman was at the injury site because of his or her employment on the vessel, that the seaman's presence was for the benefit of the vessel, and that the vessel owner had some control over the injury site. Not all of these factors are present in any of the cases we have reviewed, but in each case, the court concluded that the employee was acting in the course of employment because the seaman's presence at the injury site was directly tied to the seaman's employment on the vessel.

¶18 Shoffner was not acting within the course of her employment when she allegedly twisted her knee. Although her alleged injury occurred along the only practical route between the employee-designated parking lot and the vessel and her return was for both her and her employer's benefit, these facts alone do not establish that she was within the course of employment. It is undisputed that WSF did not pay Shoffner for travel time or mileage and that she was not under the vessel owner's supervision when she allegedly twisted her knee. Further, there is no indication that she would have been subject to discipline if she had not walked where she did. She states that her "managers prohibited the crew from parking elsewhere on NW Wesley Way," but this does not preclude employees from taking the bus or parking in other unrestricted areas. CP at 269. Finally, she failed to establish that her employer had control over the alleged specific injury site or its condition. Shoffner was allegedly injured, not on the vessel or in the rented parking lot, but on a public sidewalk. She attempts to assert that WSF controlled the area, but her evidence would show only that WSF blocked Northwest Wesley Way, posted police at the entrance, and set up a staging area. None of these actions gave WSF complete control over the place where Shoffner twisted her knee, which remained a public sidewalk apparently in exactly the same condition that it was in before WSF arranged to control public access to the area. Although Shoffner asserts in her declaration that WSF had control over the sidewalk where her alleged injury occurred, such conclusory statements are insufficient to defeat summary judgment. *Meyer*, 105 Wn.2d at 855.

¶19 Even if Shoffner had sufficiently established that WSF had some control over the sidewalk, this control was not exclusive, contrary to her contentions. The street was still open to local traffic, and the agreement between WSDOT and Kitsap County states that the county was still responsible for maintaining the area. There is no indication that WSF limited public access to the public sidewalks.

¶20 Shoffner argues that her case is similar to other cases where brown-water seamen were injured en route to their vessels. These cases are all distinguishable.

¶21 In *Pensiero*, the court held that the employee was within his course of employment when he was injured crossing another company's boat to reach his employer's vessel. 2007 WL 3353481, at \*1, \*3, 2007 U.S. Dist. LEXIS 83535, at \*2-3, \*9-10. Unlike Shoffner, the employee in *Pensiero* received a transportation stipend, a fact the court relied on in determining that boarding the vessel was part of the "employment relationship." 2007 WL 3353481, at \*3, 2007 U.S. Dist. LEXIS 83535, at \*9-10. Additionally, the employee in *Pensiero*, under threat of discipline, was forced to cross another vessel that had the obstructions and risks of an area designed and maintained to be a working boat, not a public walkway. 2007 WL 3353481, at \*3, 2007 U.S. Dist. LEXIS 83535, at \*7-10. Finally, Shoffner was not taking the only route to board her vessel at the time of her alleged injury and there is no indication that she would have been subject to discipline if she had not walked where she did.

¶22 In both *Bavaro v. Grand Victoria Casino* and *Knight v. Grand Victoria Casino*, the employee was injured on the employer's premises. 2001 WL 289782, at \*2, 2001 U.S. Dist. LEXIS 3091, at \*6-8 (N.D. Ill. Mar. 15, 2001); 2000 WL 1434151, at \*1, 2000 U.S. Dist. LEXIS 14471, at \*1-2 (N.D. Ill. Sept. 27, 2000). In *Bavaro*, the employee slipped and fell in the employer-owned parking garage adjacent to the casino where she worked. 2001 WL 289782, at \*2, 2001 U.S. Dist. LEXIS 3091, at \*7. In *Knight*, the employee fell on a walkway connecting the employer's parking garage to a pavilion the employer owned. 2000 WL 1434151, at \*1, 2000 U.S. Dist. LEXIS 14471, at \*2. The employers exclusively controlled the areas where both injuries occurred. In contrast, here, Shoffner allegedly twisted her knee on a public sidewalk that was constructed and maintained by the county and not exclusively controlled by WSF.

¶23 In determining whether an employee was within her course of employment at the time of injury, courts consider whether (1) the employee was on a direct route to her vessel, (2) the employee would have been subject to discipline if she did not arrive, (3) her return to the vessel was for the benefit of both the employee and the shipowner, (4) the employee was under the direct supervision of the ship owner when injured, (5) the ship owner had control over the premises where the injury occurred, and (6) the employee received a travel stipend. Here, Shoffner was able to prove only that she was on a direct route to her vessel and that her return benefitted both her and WSF. Her evidence was insufficient to prove that she would have been subject to discipline, that WSF had control over the public sidewalk where she allegedly twisted her knee, or that she received a travel stipend. Accordingly, Shoffner was not in the course of her employment. We affirm the trial court's order granting summary judgment to WSF and Victoria Rapid Transport and dismissing Shoffner's claims.

IV. ATTORNEY FEES

¶24 Shoffner argues that because WSF and Victoria Rapid Transit have persistently and unreasonably refused to pay maintenance and cure, she is entitled to attorney fees. A finding that an employer acted callously or willfully in withholding maintenance and cure is a basis for recovering attorney fees. *Clausen*, 174 Wn.2d at 77. WSF and Victoria Rapid Transit successfully disputed whether maintenance and cure was applicable in this situation. Accordingly, we decline to award Shoffner attorney fees because her employer did not willfully or callously withhold maintenance and cure.

¶25 We affirm the trial court.

VAN DEREN, J., concurs.

¶26 QUINN-BRINTNALL, J. (concurring) — Although I agree with the result reached by my colleagues, I write separately

to stress that the common law remedies of maintenance and cure are distinct from statutory remedies an injured seaman may seek under the Jones Act.[4] Maintenance and cure are no-fault remedies available under general maritime law that require a defendant to prove only, by a preponderance of the evidence,

> (1) her engagement as a seaman; (2) her illness or injury occurred, manifested, or was aggravated while in the ship's service; (3) the wages to which she is entitled; and (4) the expenditures for medicines, medical treatment, board, and lodging.

*Tuyen Thanh Mai v. Am. Seafoods Co.*, 160 Wn. App. 528, 538-39, 249 P.3d 1030 (2011). Establishing liability under the Jones Act, however, requires a defendant to prove, by a preponderance of the evidence, that she was injured in the course of employment *and* that her employer's negligence, however slight, was a cause of her injuries. *Havens v. F/T Polar Mist*, 996 F.2d 215, 218 (9th Cir. 1993).

¶27 In *Braen v. Pfeifer Oil Transportation Co.*, 361 U.S. 129, 132, 80 S. Ct. 247, 4 L. Ed. 2d 191 (1959), the United States Supreme Court stated that common law maintenance and cure cases clarify that "the scope of a seaman's employment or the activities which are related to the furtherance of the vessel are not measured by the standards applied to land-based employment relationships." In addition, the Court noted that maintenance and cure cases "supply relevant guides to the meaning of the term 'course of employment' under the [Jones] Act since" that term "is the equivalent of the 'service of the ship' formula used in maintenance and cure cases." *Braen*, 361 U.S. at 132-33.

¶28 But the *Braen* Court did not conflate its analysis of common law maritime claims with claims brought under the Jones Act; the *Braen* case involved *only* a Jones Act claim. Here, the majority cites *Braen* for the proposition that Jones Act claims and maintenance and cure claims

---

[4] 46 U.S.C. § 30104.

need not be separately analyzed. Majority at 873. In my view, this extends *Braen* too far.

¶29 I agree with the majority that Leigh Ann Shoffner's status as an off-duty, brown-water seaman precludes recovery of the general maritime remedies of maintenance and cure. I also agree that Shoffner's Jones Act claim for negligence fails because she was merely commuting to work and her injury did not occur on Washington State Ferries' (WSF) premises or even on premises exclusively under WSF's control. I write separately to highlight the important differences between general maritime and Jones Act claims, and the confusion that conflating them can create. Although I concur with the result, I would have addressed Shoffner's claims separately to reach it. Accordingly, I concur in the result only.

Review denied at 177 Wn.2d 1022 (2013).