FILED
COURT OF APPEALS
DIVISION II

2014 JAN 28 AM 9: 57

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CARA J. STINSON, a seaman, | No. 44004-1-II |
| Appellant, | |
| v. | |
| STATE OF WASHINGTON; and WASHINGTON STATE DEPARTMENT OF CORRECTIONS, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, C.J. — Cara Stinson appeals summary judgment dismissal of her federal maritime law claims against the State of Washington and its Department of Corrections, arising from Stinson's MRSA (methicillin resistant staphylococcus aureus)[1] infection, which she acquired during her tenure as a Department of Corrections seaman. Stinson argues that she provided evidence sufficient to survive summary judgment against her on her federal maritime law claims under (1) the Jones Act,[2] (2) maintenance and cure, and (3) unseaworthiness. We reverse summary judgment on all claims because issues of material fact exist regarding whether Stinson more probably than not acquired MRSA on the ferries or on the docks, rather than off the job.

---

[1] MRSA is a form of staph bacteria that is resistant to multiple strains of antibiotics typically used for the treatment of staph infections.

[2] 46 U.S.C. § 30104.

FACTS

A.    *Infection*

Stinson suffered severe symptoms from a MRSA infection around March or April of 2008.  In March or April of 2008, Stinson noticed a small pimple on her buttocks.  Stinson's pimple either was or quickly became a MRSA infection.  The MRSA infection grew larger and more painful until Stinson could not sit down.  The MRSA infection then began to spread down her leg.  Approximately eight days after onset, the infection became so severe that Stinson almost passed out while working on one of the ferries, and went to the emergency room.

Two days after Stinson's emergency room visit, her doctors informed her that she had a MRSA infection and performed immediate surgery.  Stinson missed approximately 16 days from work due to her MRSA infection.

B.    *Employment*

Prior to and throughout the time that Stinson suffered the symptoms of her MRSA infection, Stinson worked as a seaman for the Washington State Department of Corrections.[3]  Stinson served as a deck-hand engineer on three ferries that transported passengers and inmates between the prison's McNeil Island dock and the Steilacoom dock.  Stinson's job included monitoring inmates, loading and unloading passengers, operating the ferries, and cleaning the ferries, including a restroom on one of the them.

While working on the ferries, Stinson sometimes brushed up against inmates.  On the day Stinson almost passed out due to her MRSA infection, one of the inmates had told her that he

---

[3] Stinson has named both Washington State and its Department of Corrections in her suit.  We refer to both of these institutions as "the State."

was infected with MRSA. Stinson remembered that the inmate who said he had MRSA was one of the four to six inmates working as line handlers on the ferries, but she could not remember his name. Stinson reported the inmate's statement that he had MRSA to her superior (Captain Jenkins) after returning from her hospital stay.

Stinson does not know exactly where or how she became infected with MRSA. However, in Stinson's opinion, she contracted MRSA "somewhere that doesn't get cleaned," like the ferries or the docks.[4] Clerks Papers (CP) at 59.

1. *The Ferries*

Stinson's employment required her to work on all three ferries on the Steilacoom-McNeil Island run, alternating between them as needed. The ferries had diverse passengers, including inmates, visitors of inmates, sheriffs, and state patrol officers.

Prior to when Stinson noticed her MRSA pimple, the State had removed many of the ferries' sanitation products. The ferries had no running water or soap. At some time prior to the date that Stinson noticed the pimple, the State instituted a rule prohibiting bleach—so as to follow the American Correctional Association accreditation standards designed to prevent inmates from harming themselves. The ban on bleach resulted in the removal from the ferries of the bleach mixture that the captain used to sanitize the wheelhouse and wheel. The State had also removed the ferries' antibacterial wipes and rubber gloves.

---

[4] The State, supported by two of its employees' declarations, denies and contradicts every allegation Stinson made regarding the sanitation of the ferries and the docks. Because we consider all facts and reasonable inferences in the light most favorable to the nonmoving party, we state the facts as Stinson and her mother assert them in the record's depositions and declarations. *Shoffner v. State*, 172 Wn. App. 866, 871-72, 294 P.3d 739, *review denied*, 177 Wn.2d 1022 (2013). The State does not dispute that Stinson has raised an issue of material fact as to sanitation.

For cleaning the ferries' restroom, toilet, seats, rails, and wheel house, the ferries had disinfectant, glass cleaner, and oil and grease remover. Stinson could not use rubber gloves when cleaning the ferries, because of the State's glove ban.

Of the three ferries Stinson was assigned to, only the Henley had toilets, and this ferry was out of commission during a period of time surrounding when Stinson noticed the pimple. Thus, for a period of time Stinson had no place to go to the restroom during work except for the McNeil Island dock and the Steilacoom dock.

2. *The Docks*

Stinson operated the three ferries as they transported passengers back and forth between two docks—the McNeil Island dock and the Steilacoom dock. Stinson never worked on or had to clean the docks. Both docks had restrooms, but at the time Stinson noticed her MRSA pimple, the restrooms suffered from various states of disrepair.

The McNeil Island dock had a restroom and an inmate Sani-Can. The restroom was not functional around the time Stinson noticed her MRSA pimple, and Stinson's only option on the McNeil Island dock was to use the inmate Sani-Can. Stinson asked her superior, John Little, for a second Sani-Can, because the inmate Sani-Can had incredibly poor sanitation conditions. Little at first refused, but the State eventually placed a second Sani-Can on the McNeil Island dock, prior to the time that Stinson noticed her MRSA pimple. One of the two Sani-Cans had soap. However, that soap was always empty because the State did not clean either Sani-Can. Urine covered the floor, and toilet paper was strewn about. Stinson used the Sani-Cans in this condition when she had to.

4

In addition to the McNeil Island dock restroom and Sani-Cans, the Steilacoom dock had restrooms in its dock house. The access to these restrooms was limited to employees and guests of inmates. These restrooms usually had running water, but for a period of time they did not. Stinson could not remember when the Steilacoom dock restrooms lacked running water, but to her "best recollection" it was before the time she noticed her MRSA pimple. CP at 53.

C.    *Personal Life*

Stinson's life during the time she became infected with MRSA was limited to working at the ferries, often 11 hour days, 6 days a week. Because Stinson only had one day off per week, she was exhausted and never left her home other than to go to work. Thus Stinson never went to the grocery store, and had no social life at the time surrounding her MRSA infection.

Stinson lived with her partner, who did the grocery shopping. She was never intimate with her partner, and did "not really" touch or kiss her partner. CP at 55. Stinson had three animals in her house. Stinson had no visitors in the year prior to discovering her MRSA pimple other than her brother, who visited once around the time she noticed her MRSA pimple.

Stinson was always clean in her personal life, and became even more so after her training as an emergency medical technician. Stinson always used hand sanitizer, and frequently told her mother to do the same.

D.    *Medical Opinions*

In granting summary judgment, the trial court considered statements from physicians each party filed. Dr. Joyce Luteyn opined that Stinson contracted MRSA at work, and Dr. Peter Marsh stated that any opinion that Stinson contracted her MRSA infection at her work constituted pure speculation.

5

1. *Joyce Luteyn, M.D.*

Dr. Joyce Luteyn treated Stinson for her MRSA infection. Luteyn has general medical knowledge and experience, but had no special expertise on MRSA or infectious disease.

Luteyn made several assertions about MRSA generally: (1) MRSA was not an airborne disease, (2) an infection is caused only by direct contact with MRSA bacteria, (3) one can transmit MRSA through contact with infected individuals or through contact with any surface infected with MRSA, (4) MRSA can remain on a surface for a long time, (5) generally MRSA infects an open wound, which could be a pimple or a hair follicle, (6) the rate of MRSA was much higher in prisons than in other environments, and (7) typically doctors can never reliably determine the specific source of a MRSA infection, because too many potential sources exist, and it was incredibly easy to become infected with MRSA. Luteyn further stated that washing your hands will remove the bacteria, and is the best way to protect against infection.

Luteyn opined that, on a more probable than not basis, Stinson was infected with MRSA while on the job. Luteyn supported this opinion with her knowledge that (1) prisons have high rates of MRSA, (2) Stinson was unable to keep her hands or body parts clean while at work, and (3) Stinson had to share a toilet with others at work. Luteyn stated that the ability to wash one's hands and keep oneself clean was critical in high risk situations of MRSA, such as a prison. Luteyn stated that for this reason, Stinson had a higher risk while working on the ferries— transporting and working with inmates—than an average person would have in their life.

2. *Peter Marsh, M.D.*

Dr. Peter Marsh, a board certified specialist in infectious disease, reviewed the medical reports of Stinson's MRSA case. Marsh concluded that on a more probable than not basis, no

evidence supported Stinson's claim that MRSA resulted from her employment with the State. Marsh supported his conclusion with his statement that it was "entirely speculative" to say where Stinson acquired MRSA, because MRSA was commonplace within the community, and constituted more than 60 per cent of all staph aureus infections. CP at 89. Marsh stated that MRSA can occur from any skin-to-skin contact, anywhere from the community.

E.     *Procedural History*

Stinson made claims against the State under the Jones Act, maintenance and cure, and unseaworthiness, for damages resulting from her MRSA infection. The State moved for summary judgment as to all of Stinson's claims. The State argued below that the superior court should not consider Dr. Luteyn's testimony when determining whether summary judgment was appropriate, because Luteyn lacked the requisite knowledge to provide an opinion as to what caused Stinson's MRSA infection.

The trial court granted summary judgment against Stinson and dismissed all of her claims. Stinson appeals.

## ANALYSIS

We review summary judgment determinations de novo. *Dean v. Fishing Co. of Alaska, Inc.*, 177 Wn.2d 399, 405, 300 P.3d 815 (2013). Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Dean*, 177 Wn.2d at 405. We do not weigh evidence or assess witness credibility on summary judgment. *Barker v. Advanced Silicon Materials, LLC*, 131 Wn. App. 616, 624, 128 P.3d 633 (2006).

When determining whether summary judgment is appropriate, we consider the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Shoffner v. State*, 172 Wn. App. 866, 871-72, 294 P.3d 739 (2013), *review denied*, 177 Wn.2d 1022 (2013). While the moving party bears the initial burden of showing that no issue of material fact exists, "[t]he nonmoving party cannot merely claim contrary facts and may not rely on speculation, argumentative assertions that unresolved factual issues remain, or on affidavits considered at face value." *Shoffner*, 172 Wn. App. at 872.

We may determine a question of fact on summary judgment as a matter of law if reasonable minds could reach but one conclusion from the evidence. *Swinehart v. City of Spokane*, 145 Wn. App. 836, 844, 187 P.3d 345 (2008). However, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Breach and proximate cause are generally fact questions for the trier of fact." *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

When a seaman brings a maritime action into a state court, federal statutory and common law controls. *Clausen v. Icicle Seafoods, Inc.*, 174 Wn.2d 70, 76, 272 P.3d 827, *cert. denied*, 133 S. Ct. 199 (2012).

Neither state nor federal workers' compensation provides relief to injured seamen. *Clausen*, 174 Wn.2d at 76. However, a seaman may make claims under the federal maritime doctrines of the Jones Act, maintenance and cure, and unseaworthiness.

## I. ADMISSIBILITY OF LUTEYN'S TESTIMONY

As a threshold matter, the State argues that we should disregard Luteyn's statements of opinion, because her testimony is inadmissible under ER 702. We disagree.[5]

We review evidence rulings in conjunction with summary judgment motions de novo. *Parks v. Fink*, 173 Wn. App. 366, 375, 293 P.3d 1275, *review denied*, 177 Wn.2d 1025 (2013). We consider only admissible facts and affidavits in determining whether summary judgment is proper. CR 56(e); *Short v. Battle Ground School Dist.*, 169 Wn. App. 188, 196, 279 P.3d 902 (2012).

ER 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Our Supreme Court has held that an expert's opinion is admissible if the witness is properly qualified, relies on generally accepted theories, and has testimony that is helpful to the trier of fact. *Philippides v. Bernard*, 151 Wn.2d 376, 393, 88 P.3d 939 (2004). We construe "helpfulness" to the trier of fact broadly. *Philippides*, 151 Wn.2d at 393. However, an expert must not testify beyond her area of expertise. *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 102, 882 P.2d 703 (1994).

In this case, Luteyn was the doctor who treated Stinson for her MRSA infection. As a medical doctor with experience treating patients who suffer from MRSA infections, Luteyn is

---

[5] The State cites *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993), for the proposition that expert testimony is generally required to prove medical diagnosis and causation. However, this rule is specifically limited to medical malpractice cases, and thus does not apply to Stinson's case. *Guile*, 70 Wn. App. at 25.

qualified to testify as to the probable source of Stinson's MRSA infection. We hold that Dr. Luteyn is qualified to testify as to her medical opinion regarding the probability that Stinson acquired her MRSA infection while on the job or while on the ferries.

## II. THE JONES ACT

Stinson argues that the trial court erred by granting summary judgment against her on her Jones Act claim. We agree. The Jones Act created a statutory cause of action for negligence, stating as follows:

> A seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer.

46 U.S.C. §.30104.

The elements of a Jones Act negligence claim are duty, breach, notice, and causation. *Ribitzki v. Canmar Reading & Bates, Ltd.*, 111 F.3d 658, 662 (9th Cir. 1997). For a duty to exist, the seaman must have suffered injury "in the course of employment." 46 U.S.C. § 30104. For seamen like Stinson who do not *live* on the ferries (called "brown-water seamen") this means that the harm must have occurred while the seaman was on the job, rather than off duty. *See Shoffner*, 172 Wn. App. at 874-76.

An employer has a broad duty under the Jones Act to provide a safe ship and to provide seamen in its employ with a safe workplace. *Havens v. F/T Polar Mist*, 996 F.2d 215, 218 (9th Cir. 1993); *Ribitzki*, 111 F.3d at 662. We interpret the Jones Act liberally to achieve its beneficial purpose. *Shoffner*, 172 Wn. App. at 873. Even the slightest negligence renders the employer liable. *Havens*, 996 F.2d at 218.

Likewise, a plaintiff can establish causation if the defendant's negligence played any part, however slight, in causing the injury. *Ribitzki*, 111 F.3d at 664. This test, often described as a "featherweight causation standard" provides that the slightest evidence of causation will allow a plaintiff to survive summary judgment. 111 F.3d at 664.

Here, an issue of material fact exists as to whether the State negligently failed to provide sufficient cleaning materials on the ferries, and negligently failed to properly clean the restrooms and Sani-Cans on the docks. An issue of material fact also exists as to whether these negligent acts of the State played a part, however slight, in causing Stinson's MRSA infection.

A reasonable jury could find that the State negligently failed to properly provide a safe ferry. The ferries had no running water or soap. The State removed bleach, anti-bacterial wipes, and gloves from the ferries, and required Stinson to clean the ferries without these cleaning materials.

A reasonable jury could also find that the State negligently failed to provide safe dock bathrooms. On the McNeil Island dock, the restroom was out of order when Stinson developed her MRSA infection. There was a time when only the inmate Sani-Can was available. Even after the State installed a second Sani-Can, the soap was never refilled because the State did not clean the Sani-Cans. The Steilacoom dock bathrooms were without running water for a period of time.

A jury could further find that the State's negligent acts more likely than not caused Stinson's MRSA infection. Luteyn considered Stinson's working conditions and her personal life and then concluded that it was more probable than not that Stinson's MRSA infection occurred while Stinson was on the job.

11

Marsh's medical declaration—concluding that Stinson cannot prove causation—does not resolve the issue for summary judgment purposes. We do not resolve conflicting expert testimony on summary judgment, as it is a credibility question for the jury. *Barker*, 131 Wn. App. at 624; *see also Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 119-20, 11 P.3d 726 (2000).

The record sufficiently raises an issue of material fact as to whether—on a more probable than not basis—the State's negligent failure to provide sanitary working conditions contributed "however slightly" to Stinson's MRSA infection. This is because a reasonable jury could find that the State's negligent failure to provide the materials necessary for Stinson to maintain her cleanliness on the ferries, and its negligent failure to clean or refill the soap in the restrooms or Sani-Cans, more probably than not contributed to her contracting a MRSA infection—particularly because she was in a "high risk environment" for MRSA. Thus summary judgment was inappropriate on Stinson's Jones Act claim.

### III. MAINTENANCE AND CURE

Stinson argues that the trial court erred in granting summary judgment against her claim for maintenance and cure because an issue of material fact exists as to whether her MRSA condition occurred, manifested, or was aggravated while on the job. We agree.

A shipowner has a broad duty to pay maintenance and cure to any seaman in its employ who suffers an illness or injury while in service of the ship. *Dean*, 177 Wn.2d at 405-06. "Maintenance" requires the shipowner to pay a seaman a per diem living allowance for food and lodging comparable to what the seaman would have received while at sea. 177 Wn.2d at 406. "Cure" obligates the shipowner to pay for all medical expenses to treat an injury or illness—

occurring while the seaman is working for the ship—until maximum cure is reached. 177 Wn.2d at 406.

The shipowner's duty to provide maintenance and cure arises whenever the seaman can prove with a preponderance of the evidence that "(1) they were employed as seamen, (2) their injuries or illnesses occurred, manifested, or were aggravated while in the ship's service, (3) the wages to which they are entitled, and (4) expenditures for medicines, medical treatment, board and lodging." 177 Wn.2d at 409. The seaman's burden of proof is relatively light. 177 Wn.2d at 409. We resolve all ambiguities and doubts related to maintenance and cure in favor of the seaman. 177 Wn.2d at 408.

Causation is irrelevant to the shipowner's duty to provide maintenance and cure. *See Tuyen Thanh Mai v. American Seafoods Co., LLC*, 160 Wn. App. 528, 547, 249 P.3d 1030 (2011). In fact "a seaman is entitled to recover for a *preexisting condition* that manifests itself while the seaman is in the ship's service." *Tuyen Thanh Mai*, 160 Wn. App. at 547 (emphasis added). For brown-water seamen like Stinson, "in the ship's service" means that the harm must have occurred while the seaman was on the job, rather than off duty. *See Shoffner*, 172 Wn. App. at 874-76.

We hold that summary judgment is inappropriate on Stinson's maintenance and cure claim. This is because Stinson has raised an issue of material fact as to whether the infection more likely than not occurred, manifested, or was aggravated while she was working "in the ship's service."

First, Stinson almost passed out from her MRSA infection—and had to go to the emergency room—while at work on the ferries. Thus regardless of whether Stinson acquired the infection while on the job, an issue of material fact exists as to whether or not her MRSA was a condition that "manifested" itself on the job. *See Tuyen Thanh Mai*, 160 Wn. App. at 547. Second, Luteyn concluded, after considering the conditions at Stinson's job, as well as her personal life, that it was more probable than not that the MRSA infection occurred while Stinson was on the job.

The record sufficiently raises an issue of material fact as to whether Stinson more probably than not acquired a MRSA infection while she was on the job. A reasonable jury could find that the ferries and docks were unsanitary, and combine this with Stinson's long work hours on the ferries and docks. The jury could then conclude that it is more probable that Stinson acquired MRSA during the long hours she spent working on the unsanitary, public, and crowded ferries and docks, rather than during the time she lived a fastidious personal life where she rarely if ever left home. Thus summary judgment is inappropriate on Stinson's maintenance and cure claim.

## IV. UNSEAWORTHINESS

Stinson argues that summary judgment was inappropriate on her seaworthiness claim, because an issue of material fact exists as to whether she contracted MRSA because of the ferries' inadequate cleaning supplies. We agree.

A seaworthy ship is one that is reasonably fit for its intended use. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960). Unseaworthiness is a form of strict liability, in that the plaintiff does not have to show fault. *Miller v. Arctic Alaska Fisheries Corp.*, 133 Wn.2d 250,

264-65 n.7, 944 P.2d 1005 (1997). To establish a claim for unseaworthiness, a plaintiff must show that she (1) "was injured while in the ship's service, (2) by a piece of ship's equipment, (3) which was not reasonably fit for its intended use." 133 Wn.2d at 264.

The doctrine of unseaworthiness is broad and extends to almost any defective condition related to the ship, however temporary that defective condition may be. *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971). Unseaworthy conditions can arise from a wide variety of circumstances. *Usner*, 400 U.S. at 499 (1971). The duty extends to appliances "appurtenant" to the ship. *Bishop v. Alaska S. S. Co.*, 66 Wn.2d 704, 709-10, 404 P.2d 990 (1965). A ship is unseaworthy if it is insufficiently or defectively equipped. *Waldron v. Moore-McCormack Lines, Inc.*, 386 U.S. 724, 726 (1967).

Causation is more difficult to establish for unseaworthiness than for the Jones Act. To establish causation in the case of unseaworthiness, a plaintiff must demonstrate not only that the seaman was in service of the ship, but also that a piece of the ship or the ship's condition played a substantial part in causing the plaintiff's injuries. *Faraola v. O'Neill*, 576 F.2d 1364, 1366 (9th Cir. 1978).

Nonetheless, summary judgment was inappropriate as to Stinson's claim for unseaworthiness. Taking the facts in the light most favorable to Stinson, a reasonable jury could find that the State failed to provide any running water, soap, bleach, or gloves on the ferries, and required Stinson to clean the ferry without alternative cleaning items. A reasonable jury could determine that the lack of proper cleaning equipment constituted an unseaworthy condition, and that this unseaworthy condition constituted a substantial factor in Stinson's infection with MRSA. Thus summary judgment was inappropriate on her unseaworthiness claim.

No. 44004-1-II

We reverse and remand for trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Hunt, J.

_____
Penoyar, J.

16