

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE ___MAY 09 2013___

_Madsen, C.J._
CHIEF JUSTICE

This opinion was filed for record
at _8:00 a.m._ on _May 9, 2013_

_Ronald R. Carpenter_
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| IAN DEAN, | ) | |
| | ) | |
| Petitioner, | ) | No. 87407-7 |
| | ) | |
| v. | ) | EN BANC |
| | ) | |
| THE FISHING COMPANY OF | ) | Filed: ___MAY 09 2013___ |
| ALASKA, INC. and ALASKA | ) | |
| JURIS, INC., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

FAIRHURST, J.—Ian Dean worked aboard a fishing vessel owned by The

Fishing Company of Alaska (FCA). While aboard the vessel, Dean experienced

pain in his hands and neck. After Dean left the vessel, he sought medical treatment

and FCA began paying Dean maintenance and cure as required by general

maritime law. After paying Dean's maintenance and cure for just over three years,

FCA stopped paying when it obtained the opinion of a physician that Dean's

injuries had reached maximum cure. At the time when FCA cut off Dean's

maintenance and cure, Dean's own physician opined that Dean's injuries could

benefit from additional treatment. Dean sued FCA in King County Superior Court. Dean also filed a motion asking the trial court to order FCA to resume paying maintenance and cure. The trial court applied a summary judgment standard to Dean's motion and denied the motion. The Court of Appeals affirmed. We reverse the Court of Appeals.

## FACTS AND PROCEDURAL HISTORY

In May and June 2006, Dean worked as a fish processor aboard the *Alaska Juris*, a fishing vessel owned by FCA. During that time, Dean worked in quarters with a low overhead so that Dean, who is 6 feet, 3 inches tall, had to work stooped over. Soon after leaving the ship, Dean sought medical treatment for pain in his neck, wrists, and hands. A physician diagnosed Dean's neck pain as muscle strain and prescribed over-the-counter medication. Dean did not seek additional treatment for his neck pain until May 2008, at which time a different physician recommended physical therapy and light massage. Dean's hand pain was diagnosed as carpal tunnel syndrome. Dean had carpal tunnel release surgery in 2008 and 2009.

FCA began paying Dean maintenance and cure soon after Dean left the ship in June 2006. In August 2009, FCA hired Dr. Thomas Williamson-Kirkland to examine Dean's neck. Dr. Williamson-Kirkland stated that his examination revealed Dean's neck to be normal. Furthermore, Dr. Williamson-Kirkland stated,

while it was possible Dean's neck had been injured on the *Alaska Juris*, any injury "would have resolved within several months of leaving the vessel." Clerk's Papers at 41. Shortly after Dr. Williamson-Kirkland's examination, FCA stopped paying maintenance and cure. In October 2009, Dr. Alfred Aflatooni, Dean's treating physician, opined that Dean could benefit from additional treatment for both his hand and neck injuries.

Dean sued FCA in King County Superior Court for personal injury damages under the Jones Act, 46 U.S.C. § 30104, and for maintenance and cure under general maritime law. Prior to trial, Dean filed a motion to reinstate maintenance and cure requesting that the court order FCA to resume paying Dean maintenance and cure because Dean's neck injuries had not reached maximum cure. Dean's motion was supported by a declaration of Dr. Aflatooni. The trial court treated the pretrial motion as a motion for summary judgment. The trial court ruled that, viewing the facts in the light most favorable to the nonmoving party—FCA—there were genuine issues of material fact as to whether Dean's injuries had reached maximum cure. Thus, the trial court ruled that Dean was not entitled to judgment as a matter of law and did not order FCA to resume paying Dean maintenance and cure.

The parties proceeded to arbitration and the arbitrator found in favor of FCA. Dean and FCA filed a stipulated judgment in favor of FCA contingent on

Dean's appeal of the maintenance and cure issue. The stipulated judgment provided that the outcome of the current appeal would determine the prevailing party.

The Court of Appeals affirmed the trial court. *Dean v. Fishing Co. of Alaska, Inc.*, 166 Wn. App. 893, 272 P.3d 268 (2012). The Court of Appeals held that the trial court did not err by applying the summary judgment standard to Dean's motion to reinstate maintenance and cure. The Court of Appeals suggested that instead of bringing a motion to reinstate maintenance and cure, Dean could have sought a temporary preliminary injunction under CR 65(a) or moved for an expedited evidentiary hearing under CR 42(b). This court granted Dean's petition for review. *Dean v. Fishing Co. of Alaska, Inc.*, 175 Wn.2d 1017, 290 P.3d 133 (2012).

## ISSUE

Under general maritime law, when a shipowner stops paying maintenance and cure to an injured seaman, does a trial court err by applying the summary judgment standard to the seaman's motion to reinstate maintenance and cure?

## ANALYSIS

A.    Jurisdiction

Although federal judicial power "extend[s] . . . to all cases of admiralty and maritime jurisdiction," this court has concurrent jurisdiction to adjudicate this case

under the "saving to suitors" clause. U.S. CONST. art. III, § 2, cl. 1; *see* 28 U.S.C. § 1333(1) ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors* in all cases all other remedies to which they are otherwise entitled." (emphasis added)); *Endicott v. Icicle Seafoods, Inc.*, 167 Wn.2d 873, 878, 224 P.3d 761 (2010) ("The 'saving to suitors' clause gives plaintiffs the right to sue on maritime actions in state court." (citing *Madruga v. Superior Court*, 346 U.S. 556, 560-61, 74 S. Ct. 298, 98 L. Ed. 143 (1954))).

B.    Standard of Review

The application of an incorrect legal standard is an error of law that we review de novo. *Jongeward v. BNSF Ry. Co.*, 174 Wn.2d 586, 592, 278 P.3d 157 (2012) (citing *State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001)). We also review de novo an order granting summary judgment. *Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c). Because the issue presented in this case involves whether summary judgment was the correct legal standard to apply to Dean's motion to reinstate maintenance and cure, we review this issue de novo.

## C.   Background

Under general maritime law, a shipowner has a duty to provide maintenance and cure to a seaman who "becomes ill or is injured while in the service of the ship." *Vella v. Ford Motor Co.*, 421 U.S. 1, 3, 95 S. Ct. 1381, 43 L. Ed. 2d 682 (1975); *Clausen v. Icicle Seafoods, Inc.*, 174 Wn.2d 70, 76, 272 P.3d 827 (2012). "Maintenance" is a per diem living allowance for food and lodging comparable to what the seaman is entitled to while at sea; "cure" is payment of medical expenses incurred in treating the seaman's injury or illness. *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528, 58 S. Ct. 651, 82 L. Ed. 993 (1938); *Clausen*, 174 Wn.2d at 76. The shipowner's duty to pay maintenance and cure "continues until the seaman . . . reaches the point of maximum medical recovery."[1] 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6-28, at 393 (4th ed. 2004) (citing *Farrell v. United States*, 336 U.S. 511, 522-23, 69 S. Ct. 707, 93 L. Ed. 850 (1949)). "'Maximum medical cure' is reached when the seaman recovers from the injury, the condition permanently stabilizes or cannot be improved further." *McMillan v. Tug Jane A. Bouchard*, 885 F. Supp. 452, 459 (E.D.N.Y. 1995).

Maintenance and cure is an "ancient doctrine." *Farrell*, 336 U.S. at 520-21; *see also* SCHOENBAUM, *supra*, § 6-28, at 376 ("This duty first appears in the medieval sea codes and is undoubtedly of earlier origin."). A seaman's right to

---

[1]Maintenance and cure cases alternatively refer to the concept of "maximum cure" as "maximum medical recovery" or "maximum medical improvement."

maintenance and cure was first recognized in the United States by Justice Story.

*See Harden v. Gordon*, 11 F. Cas. 480 (C.C.D. Me. 1823) (No. 6,047); *Reed v. Canfield*, 20 F. Cas. 426 (C.C.D. Mass. 1832) (No. 11,641). Justice Story

articulated the underlying policy of maintenance and cure as follows:

> Seamen are by the peculiarity of their lives liable to sudden sickness from change of climate, exposure to perils, and exhausting labour. They are generally poor and friendless, and acquire habits of gross indulgence, carelessness, and improvidence. If some provision be not made for them in sickness at the expense of the ship, they must often in foreign ports suffer the accumulated evils of disease, and poverty, and sometimes perish from the want of suitable nourishment. Their common earnings in many instances are wholly inadequate to provide for the expenses of sickness; and if liable to be so applied, the great motives for good behaviour might be ordinarily taken away by pledging their future as well as past wages for the redemption of the debt. . . On the other hand, if these expenses are a charge upon the ship, the interest of the owner will be immediately connected with that of the seamen. The master will watch over their health with vigilance and fidelity. He will take the best methods, as well to prevent diseases, as to ensure a speedy recovery from them. He will never be tempted to abandon the sick to their forlorn fate; but his duty, combining with the interest of his owner, will lead him to succor their distress, and shed a cheering kindness over the anxious hours of suffering and despondency. Beyond this, is the great public policy of preserving this important class of citizens for the commercial service and maritime defence of the nation.

*Harden*, 11 F. Cas. at 483.

The United States Supreme Court relied on Justice Story's early opinions

when it definitively established a seaman's right to maintenance and cure in *The*

*Osceloa*, 189 U.S. 158, 175, 23 S. Ct. 483, 47 L. Ed. 760 (1903).[2] In *Taylor*, the Court again referenced the "classic passage" written by Justice Story—quoted above—to lay out three primary justifications for maintenance and cure: (1) "the protection of seamen," (2) "the inducement of masters and owners to protect the safety and health of seamen while in service," and (3) "the maintenance of a merchant marine for the commercial service and maritime defense of the nation by inducing [sea]men to accept employment in an arduous and perilous service." 303 U.S. at 528.

In subsequent cases, the Court emphasized that a shipowner's duty to pay maintenance and cure is "'broad,'" *Vella*, 421 U.S. at 4 (quoting *Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724, 730, 63 S. Ct. 930, 87 L. Ed. 1107 (1943)), and should be liberally interpreted "'for the benefit and protection of seamen who are [the admiralty courts'] wards,'" *Vaughan v. Atkinson*, 369 U.S. 527, 531-32, 82 S. Ct. 997, 8 L. Ed. 2d 88 (1962) (quoting *Taylor*, 303 U.S. at 529). "[T]he shipowner's liability for maintenance and cure [is] among 'the most pervasive' of all and [is] not to be defeated by restrictive distinctions nor 'narrowly confined.'" *Vaughan*, 369 U.S. at 532 (quoting *Aguilar*, 318 U.S. at 735). In order to ensure that injured seamen were protected, the *Vaughan* Court instructed that "[w]hen there are ambiguities or doubts [related to maintenance and cure], they are resolved

---

[2]*Superseded on other grounds by statute*, Jones Act, 46 U.S.C. § 30104.

in favor of the seaman." *Id.* (citing *Warren v. United States*, 340 U.S. 523, 71 S. Ct. 432, 95 L. Ed. 503 (1951)). The Court further explained that "the seaman's right to maintenance and cure . . . is so inclusive as to be relatively simple, and can be understood and administered without technical considerations. It has few exceptions or conditions to stir contentions, cause delays, and invite litigations." *Farrell*, 336 U.S. at 516.

A shipowner's duty to pay maintenance and cure is so broad that it arises regardless of the shipowner's fault or negligence or the seaman's contributory fault. *Aguilar*, 318 U.S. at 730-31. There are very few defenses a shipowner can raise to avoid paying maintenance and cure. However, a shipowner does not have a duty to pay maintenance and cure when a seaman is injured by his own willful misconduct, *Warren*, 340 U.S. at 528, intentionally misrepresents facts about his medical history when applying to work, *McCorpen v. Cent. Gulf S.S. Corp.*, 396 F.2d 547, 548 (5th Cir. 1968), or refuses to accept medical care offered by the shipowner, *Oswalt v. Williamson Towing Co.*, 488 F.2d 51, 54 (5th Cir. 1974).

D.      Pretrial procedure regarding maintenance and cure

We now turn to the issue presented in this case. That is, how should a trial court treat a seaman's pretrial motion to reinstate maintenance and cure after the shipowner—who initially paid maintenance and cure—cuts off payments? Dean argues that the *Vaughan* principle requires trial courts to apply a standard more

9

favorable to the seaman than a summary judgment standard. FCA argues that summary judgment is the only mechanism under which a seaman can seek adjudication of his maintenance and cure rights prior to trial. We agree with Dean and conclude that the trial court erred in applying a summary judgment standard to Dean's motion to reinstate maintenance and cure.

We begin our analysis by noting that a shipowner's duty to pay maintenance and cure is "virtually automatic." *Baucom v. Sisco Stevedoring, LLC*, 506 F. Supp. 2d 1064, 1073 (S.D. Ala. 2007). A shipowner must pay maintenance and cure to seamen who prove, by a preponderance of the evidence, (1) they were employed as seamen, (2) their injuries or illnesses occurred, manifested, or were aggravated while in the ship's service, (3) the wages to which they are entitled, and (4) expenditures for medicines, medical treatment, board, and lodging. *Tuyen Thanh Mai v. Am. Seafoods*, 160 Wn. App. 528, 538-39, 249 P.3d 1030 (2011) (citing *Johnson v. Cenac Towing Inc.*, 468 F. Supp. 2d 815, 832 (E.D. La. 2006), *vacated on other grounds*, 544 F.3d 296 (5th Cir. 2008)). The seaman's burden is "'relatively light.'" *West v. Midland Enters., Inc.*, 227 F.3d 613, 616 (6th Cir. 2000) (quoting *Freeman v. Thunder Bay Transp. Co.*, 735 F. Supp. 680, 681 (M.D. La. 1990)). After a seaman has proved his initial entitlement to maintenance and cure, the burden shifts to the shipowner to prove that maximum cure has been reached. *Tuyen Thanh Mai*, 160 Wn. App. at 539; *see also* SCHOENBAUM, *supra*, §

10

6-33, at 394 (The shipowner "bears a heavy burden in deciding when to terminate maintenance and cure.").

We further note that if the shipowner unilaterally decides to stop paying maintenance and cure to a seaman based on its determination that the seaman has reached maximum cure, the seaman may reassert his rights by bringing a motion to reinstate maintenance and cure. In such an instance, "it becomes the [shipowner's] obligation to reinstate such payments." *McMillan*, 885 F. Supp. at 468. "If the [shipowner] refuses to reinstate maintenance and cure, it bears the burden of establishing that it had a legitimate reason for so refusing." *Id.* The shipowner can meet this burden by providing "unequivocal"[3] evidence that the seaman has reached maximum cure. *Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir. 1990) (citing *Tullos v. Res. Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1985)). Alternatively, the shipowner may move for an expedited trial under CR 42(b).[4] In

---

[3]A shipowner will likely not be able to show unequivocal evidence of maximum cure if there are conflicting medical opinions. *Tullos v. Res. Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir. 1990); *see also Lee v. Metson Marine Servs., Inc.*, Civ. No. 11-00169 ACK-BMK, 2012 WL 5381803, at *3 (D. Haw. Oct. 31, 2012) (unpublished) (denying shipowner's motion to terminate maintenance and cure because the conflicting medical affidavits provided by the parties lacked "'an unequivocal endorsement that [Plaintiff] attained maximum cure'" (quoting *Sefcik v. Ocean Pride Alaska, Inc.*, 844 F. Supp. 1372, 1373 (D. Alaska 1993))), *adopted by district court sub nom. Lee v. United States*, Civ. No. 11-00169 ACK-BMK, 2013 WL 321570 (D. Haw. Jan. 28, 2013) (unpublished).

[4]*See, e.g., Bloom v. Weeks Marine, Inc.*, 225 F. Supp. 2d 1334, 1336 (M.D. Fla. 2002) (suggesting that an expedited trial under Fed. R. Civ. P. 42(b) would be an appropriate procedure to apply to a seaman's motion for maintenance and cure when there are disputed factual issues); *Royal Caribbean Cruises, Ltd. v. Rigby*, 96 So. 3d 1146, 1148 (Fla. App. Dist. 2012) (after initial

an expedited trial, the shipowner would bear the same burden as it would at trial, i.e., the shipowner would have to prove by a preponderance of the evidence that the seaman had reached maximum cure.

FCA argues that the trial court properly applied a summary judgment standard to Dean's motion. We disagree. Summary disposition of maintenance and cure claims is generally not appropriate. 2 ROBERT FORCE & MARTIN J. NORRIS, THE LAW OF SEAMAN § 26:43, at 26-101(5th ed. 2003). The extent of a seaman's injuries and whether a seaman has reached maximum cure are factual questions, not legal questions. *See* SCHOENBAUM, *supra*, § 6-33, at 393.

Despite the general rule that a seaman's maintenance and cure claim should not be disposed of on summary judgment, numerous federal district courts have used summary judgment to determine a seaman's *initial* entitlement to maintenance and cure.[5] For example, if a shipowner refuses to pay maintenance and cure to an injured seaman from the outset, the seaman may sue and bring a

---

determination establishing seaman's entitlement to maintenance and cure, shipowner has burden to bring an evidentiary hearing to demonstrate the propriety of terminating or reducing payments).

[5]*See, e.g., Chaney v. Omega Protein, Inc.*, No. 09-7235, 2010 WL 1552449 (E.D. La. Apr. 15, 2010) (unpublished); *Davis v. Icicle Seafoods, Inc.*, No. 07-1565BHS, 2008 WL 418008 (W.D. Wash. Feb. 13, 2008) (unpublished); *Hale v. Excell Marine Corp.*, No. 5:07-CV-102-R, 2008 WL 4443098 (W.D. Ky. Sept. 26, 2008) (unpublished); *Loftin v. Kirby Inland Marine, LP*, 568 F. Supp. 2d 754 (E.D. Tex. 2007); *Buenbrazo v. Ocean Alaska, LLC*, No. C06-1347C, 2007 WL 7724765 (W.D. Wash. Feb. 28, 2007) (unpublished); *Mabrey v. Wizard Fisheries, Inc.*, No. C05-1499L, 2007 WL 1556529 (W.D. Wash. May 24, 2007) (unpublished); *McNeil v. Jantran, Inc.*, 258 F. Supp. 2d 926 (W.D. Ark. 2003); *Freeman*, 735 F. Supp. 680; *Lancaster Towing, Inc. v. Davis*, 681 F. Supp. 387 (N.D. Miss. 1988); *George v. Hillman Transp. Co.*, 340 F. Supp. 296 (W.D. Pa. 1972); *Hudspeth v. Atl. & Gulf Stevedores, Inc.*, 266 F. Supp. 937 (E.D. La. 1967); *Claudio v. Sinclair Ref. Co.*, 126 F. Supp. 154 (E.D.N.Y. 1954).

12

motion for summary judgment requesting the court find, as a matter of law, that the seaman is entitled to maintenance and cure.[6] Additionally, the shipowner may move for summary judgment on the grounds that the seaman failed to meet his initial burden to prove he was employed as a seaman,[7] he was injured in the service of the ship,[8] and he is incurring expenses for medical treatment, board, and lodging.[9] The shipowner may also ask the court to find, as a matter of law, that it does not have a duty to pay maintenance and cure because the shipowner has a valid defense.[10] A seaman's initial entitlement to maintenance and cure presents legal questions that can properly be resolved on summary judgment.

---

[6]*See, e.g., Chaney*, 2010 WL 1552449, at *2 (denying seaman's summary judgment motion for maintenance and cure); *Hale*, 2008 WL 4443098, at *2 (granting seaman's summary judgment motion for maintenance and cure); *Lancaster Towing*, 681 F. Supp. at 389 (denying seaman's summary judgment motion for maintenance and cure); *see also* FORCE & NORRIS, *supra*, § 26:55, at 26-131 ("The only recourse which the seaman [has] when [the shipowner fails to pay maintenance and cure] is by way of a lawsuit for maintenance and cure.").

[7]*See, e.g., Buenbrazo*, 2007 WL 7724765, at *1 (denying plaintiff's motion to compel maintenance and cure when there was a factual dispute about whether plaintiff was a seaman or longshoreman).

[8]*See, e.g., Chaney*, 2010 WL 1552449, at *1 (denying seaman's motion for summary judgment because the seaman did not provide sufficient evidence that he was injured while in the service of the vessel); *Mabrey*, 2007 WL 1556529, at *2 (denying seaman's motion to compel cure when there was conflicting evidence whether the seaman was injured while in the service of the vessel).

[9]*See, e.g., Freeman*, 735 F. Supp. at 682 (denying seaman's motion for summary judgment on maintenance and cure issue because, even though seaman would have been entitled to maintenance and cure as a matter of law, the seaman failed to provide sufficient evidence of expenses incurred as a result of her injuries).

[10]*See, e.g., Davis*, 2008 WL 418008, at *3 (denying plaintiff's motion for maintenance and cure where the parties disputed whether seaman forfeited his right to maintenance and cure); *Loftin*, 568 F. Supp. 2d at 763-64 (denying seaman's motion to compel maintenance and cure where shipowner argued that seaman willfully concealed a preexisting medical condition); *Lancaster Towing*, 681 F. Supp. at 389 (denying seaman's motion for maintenance and cure because the court found that the seaman intentionally misrepresented a back condition); *George*,

FCA's and the Court of Appeals' reliance on *Buenbrazo v. Ocean Alaska, LLC*, No. C06-1347C, 2007 WL 7724765 (W.D. Wash. Feb. 28, 2007) (unpublished) and *Mabrey v. Wizard Fisheries, Inc.*, No. C05-1499L, 2007 WL 1556529 (W.D. Wash. May 24, 2007) (unpublished) is misplaced here because this case involves reinstatement of maintenance and cure after termination, not initial entitlement. In those cases, the federal district court applied a summary judgment standard to the seaman's motion to compel maintenance and/or cure because, in those cases, the shipowners contested the seamen's initial entitlement to maintenance and cure. *Buenbrazo*, 2007 WL 7724765, at *2; *Mabrey*, 2007 WL 1556529, at *2. In *Buenbrazo*, the shipowner challenged the plaintiff's status as a seaman; in *Mabrey*, the shipowner challenged whether the seaman was injured in the service of the vessel.

As outlined above, we agree that a court may apply the summary judgment standard to determine a seaman's initial entitlement to maintenance and cure. But it does not necessarily follow that the summary judgment standard must be applied to a seaman's motion to reinstate maintenance and cure. In fact, two federal district court cases that have ruled specifically on a seaman's motion to reinstate maintenance and cure (as opposed to a motion to compel initial payment of

---

340 F. Supp. at 303 (denying shipowner's motion for summary judgment to defeat seaman's claim for maintenance and cure where the shipowner argued inter alia that statute of limitations or laches barred seaman's claim).

maintenance and cure) conclude that the summary judgment standard should not be applied. *See Gouma v. Trident Seafoods, Inc.*, No. C07-1309, 2008 WL 2020442 (W.D. Wash. Jan. 11, 2008) (unpublished); *Sefcik v. Ocean Pride Alaska, Inc.*, 844 F. Supp. 1372 (D. Alaska 1993).

In *Sefcik*, a seaman brought a motion to reinstate maintenance and cure after the shipowner terminated payment based upon its finding that the seaman had reached maximum cure. 844 F. Supp. at 1373. The shipowner urged the district court to apply a summary judgment standard to the seaman's motion, but the district court refused. *Id.* The district court stated, "An injured seaman seeking reinstatement of maintenance and cure payments which were terminated by his employer cannot be considered in the same procedural posture as a party seeking summary judgment." *Id.* The district court held that the decision to terminate maintenance and cure must be unequivocal, and given the conflicting medical opinions provided by the parties, the shipowner did not meet this standard. *Id.* The district court further reasoned that all ambiguities relating to maintenance and cure must be resolved in favor of the seaman and noted that the seaman "clearly did not file a motion for summary judgment." *Id.* at 1374. On these grounds, the district court granted the seaman's motion to reinstate maintenance and cure.

In *Gouma*, a seaman filed a motion to compel cure asking the court to order the shipowner to pay for a discogram/CT after the shipowner indicated that it

would not pay for the procedure. 2008 WL 2020442, at *1. The shipowner refused

to pay for the procedure because a physician conducting an independent medical

examination had determined that the seaman had reached maximum cure and that

the discogram/CT was unnecessary. *Id.* Like in *Sefcik*, the shipowner urged the

district court to apply a summary judgment standard to the seaman's motion, but

the district court refused. *Gouma*, 2008 WL 2020442, at *2. In granting the

seaman's motion, Chief Judge Pechman reasoned,

> Plaintiff is entitled to a presumptive continuance of maintenance and cure payments. Even if a summary judgment standard of review were to be applied in this context, disputed questions of material fact (e.g., the differing opinions of Plaintiff's and Defendants' physicians) would simply mean that Plaintiff would be entitled to continue to receive maintenance and cure until the matter was ultimately resolved at trial. The procedural model proposed by Defendants would mean that a vessel owner could escape maintenance and cure obligations at any time prior to trial simply by finding a physician who would pronounce the seaman at maximum medical cure. This Court is not prepared to depart from the [*Vaughan*] standard of resolving all doubts concerning maintenance and cure in the seaman's favor to that extent. Defendants have cited no opinion from the Ninth Circuit or the Supreme Court indicating that this historic doctrine has fallen to that level of disfavor.
>
> Similarly, Defendants may not unilaterally decide, based on the opinion of their own physician, that a seaman has reached maximum medical cure. At the very least, it violates the summary judgment standard which they themselves are championing—in the face of genuine disputes of material fact regarding the extent of Plaintiff's cure, Defendants are not entitled to summarily (and unilaterally) determine the question in their own favor. More significantly, Defendants' action appropriates to themselves the adjudicatory function of this Court—the issue of maximum cure is one of the

ultimate issues before the Court in any maritime injury litigation, and no action may be taken on it without an order of the court.

*Id.* at *2-3.

Dean is in precisely the same position as the seamen in *Sefcik* and *Gouma*. In both *Sefcik* and *Gouma*, the shipowners had cutoff the seamen's maintenance and cure based on their findings that the seamen had reached maximum cure. Like the seamen in *Sefcik* and *Gouma*, Dean was forced to file a motion reasserting his right to maintenance and cure. We agree with Chief Judge Pechman that allowing a shipowner to stop paying maintenance and cure simply because the shipowner obtained a single medical opinion pronouncing the seaman's maximum cure is contrary to the *Vaughan* principle. By applying a summary judgment standard to Dean's motion, the trial court allowed FCA to terminate its duty to pay maintenance and cure simply because FCA had obtained a medical opinion from Dr. Williamson-Kirkland. The trial court's holding placed the adjudicatory power of the court in the hands of FCA and shifted the burden of proving maximum cure from FCA to Dean (to prove that he had not reached maximum cure). The trial court erred in applying a summary judgment standard to Dean's motion.

We hold that if a shipowner stops paying maintenance and cure to a seaman because it has determined that the seaman has reached maximum cure, a trial court errs by applying a summary judgment standard to a seaman's motion to reinstate maintenance and cure. Instead, after a seaman makes such a motion, the trial court

17

should order the shipowner to reinstate such payments unless the shipowner can provide unequivocal evidence that the seaman has reached maximum cure. Alternatively, if the shipowner wishes to terminate paying maintenance and cure, the shipowner could move for an expedited trial under CR 42(b). At an expedited trial, the shipowner would have the burden to prove, by a preponderance of the evidence, that the seaman had reached maximum cure.

## CONCLUSION

We reverse the Court of Appeals and hold that the trial court erred in applying a summary judgment standard to Dean's motion to reinstate maintenance and cure. Dean asked this court to provide guidance on whether surveillance conducted by a shipowner is protected from discovery. But because the parties have agreed to forgo a trial de novo in this matter, this discovery issue is moot and we will not address it.

Fairhurst, J.

WE CONCUR:

Madsen, C.J.

Stephens, J.

Johnson, J.

Wiggins, J.

Owens, J.

González, J.

J.M. Johnson, J.

Gordon McCloud, J.