# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| ABRAHAM CHAR, | No. 72160-7-I |
| Appellant, | DIVISION ONE |
| v. | |
| AMERICAN SEAFOODS, INC., | UNPUBLISHED OPINION |
| Respondent. | FILED: March 7, 2016 |

LEACH, J. — Abraham Char appeals the dismissal by summary judgment of his lawsuit against American Seafoods Company LLC.[1] Because Char failed to present any evidence in opposition to American's amply supported summary judgment motion, we affirm the trial court.

## Background

Four different times Abraham Char suffered injuries while working on American's vessels. Each time he filed a claim and received maintenance and cure until his treating doctors determined that he had reached maximum medical improvement.

On March 12, 2010, Char injured his neck while working aboard the F/T *Ocean Rover*. This injury occurred while Char assisted independent contractors

---

[1] There is no company named "American Seafoods, Inc." The correct name is "American Seafoods Company LLC."

aboard the ship who asked for his help. The task fell outside the scope of Char's regular job duties as a fire watch aboard the vessel.

The doctor who evaluated Char diagnosed him with neck contusion. Char received treatment and physical therapy between March and May 2010, when he was released to return to fishing without restrictions. When Char asked to see another doctor, American sent him to an orthopedist, Dr. Peterson. Dr. Peterson diagnosed him with a neck contusion or sprain and prescribed additional physical therapy. Dr. Peterson released Char back to work and wrote in his chart note that he "expect[s] this will quiet down and he will not have any long term sequelae from this."

After Char's job aboard the F/T *Ocean Rover* ended on May 11, 2010, he returned to his home in Virginia for more treatment. On May 20, 2010, he saw a chiropractor, Dr. Brill, for his neck. Dr. Brill also diagnosed a neck sprain or strain and recommended chiropractic treatment. Char received this treatment in May and June 2010. On June 30, Char received an MRI (magnetic resonance imaging), which was interpreted as normal. Dr. Brill released Char to return to work without restrictions as of June 30, 2010, with no further treatment prescribed.

Char returned to work aboard the F/T *American Dynasty*. On September 16, 2010, he injured his back while lifting boxes during an offload. Char had regularly been assigned the duty of offloading. The ship supervisors teach the proper way to lift boxes during orientation. Char did not blame American for this

injury. When Char reported the injury, American sent him to Dr. Smith for evaluation. Dr. Smith diagnosed a back strain but found Char fit for modified work. The doctor stated in his chart note that once the spasm settled down, Char's symptoms should resolve. Char was given a back brace to use and directed to treat with ice and medication.

On October 31, 2010, Char reported continuing back pain and American sent him to the hospital. His emergency room (ER) exam showed no muscle spasm or tenderness, full range of motion, and no pain with motion. The ER physician diagnosed him with a back strain and recommended muscle strengthening exercises and rest.

Char returned to work on the F/T American Dynasty. He then worked on the F/T American Triumph, then on the F/T Northern Jaeger. Char worked aboard the F/T Northern Jaeger for the entire 2011 season, from January 6 to April 8. He reported no problem with his back during this period.

On April 14, 2011, Char requested a doctor's appointment for back and knee pain. He reported injuries to his knees sustained on October 15, 2010. American again sent him to Dr. Peterson. Dr. Peterson found Char's range of motion, neurologic exam, and back x-rays normal. He diagnosed a back sprain and referred Char to physical therapy. Dr. Peterson also evaluated Char's knees. He diagnosed prepatellar bursitis of the left knee. Although he concluded that this condition required no treatment, because Char was attending physical

therapy for his back, he prescribed it for Char's knees too. He released Char to return to work without restriction.

On August 3, 2011, Char returned to work on the F/T *Northern Jaeger*. On September 29, 2011, at the end of a trip, he reported that he had developed back pain during the trip. American sent Char to a clinic in Dutch Harbor, Alaska. A clinic doctor diagnosed a back sprain and released Char to modified duty with lifting restrictions. Rather than return Char to work, American returned him to Seattle to be seen by Dr. Peterson. Dr. Peterson found a normal range of motion and no objective sign of injury. He diagnosed a chronic back strain and noted in his chart that he could offer no medical treatment that would improve or cure Char's back condition. He released Char to modified work with a lifting restriction. Dr. Peterson saw Char again two weeks later and released him to return to work without any restriction.

Char requested a second opinion. American sent Char to a second orthopedist, Dr. Seligman. Dr. Seligman reported a normal exam and diagnosed a back strain. He concluded that Char did not need any further diagnostic testing or treatment. He released Char to work without any restriction.

Char returned to Dr. Peterson on November 9, 2011. He again told Char that there was no treatment for his back and that if he could not work on a fishing boat without pain, he needed to look for other work.

American paid for all known bills for Char's medical appointments and treatment for the four different injuries he reported.

-4-

Char filed this lawsuit against American, asserting claims for negligence, unseaworthiness, and maintenance and cure. American asked for summary judgment and supported its request with declarations, medical records, Char's deposition transcript, and other records. Char did not submit any responsive evidence. The trial court dismissed Char's lawsuit. He appeals.

## Analysis

Char challenges the trial court's legal conclusions about American's alleged negligence, the seaworthiness of its vessels, and his continued entitlement to maintenance and cure. American Seafood Company responds that Char did not submit competent evidence to support an essential element of each claim and that the record shows no genuine issues as to any material fact. As a preliminary matter, American also challenges the sufficiency of Char's brief to present any issue for review.

### Issues Considered on Appellate Review

The same rules of procedure that bind an attorney apply to a pro se litigant.[2] RAP 10.3 requires that an appellate brief supply "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."[3] We do not consider conclusory

---

[2] Westberg v. All-Purpose Structures, Inc., 86 Wn. App. 405, 411, 936 P.2d 1175 (1997).

[3] RAP 10.3(a)(6); In re Estate of Lint, 135 Wn.2d 518, 532, 957 P.2d 755 (1998).

arguments that are unsupported by citation to authority.[4] But RAP 1.2(a) allows an appellate court to exercise its discretion to consider cases and issues on their merits despite one or more technical flaws in a litigant's compliance with the Rules of Appellate Procedure.[5] In a case "where the nature of the appeal is clear and the relevant issues are argued in the body of the brief and citations are supplied so that the court is not greatly inconvenienced and the respondent is not prejudiced," the court should exercise its discretion to consider the merits of the case or issue.[6]

Char's pro se briefing does not include any assignments of error, legal citations, or citations to any evidence in the record supporting his conclusory arguments. But it does provide sufficient argument to allow American to identify the issues and respond. Thus, exercising our RAP 1.2 discretion, we address the merits of Char's appeal.

However, when reviewing a summary judgment decision, this court only considers evidence and issues called to the attention of the trial court.[7] Char makes the following arguments for the first time on appeal: (1) American did not pay money promised to him on October 24, 2011; (2) American fired him before his contract ended; (3) American discriminated against him based on his race; (4) American owes him wages for the past four years based on his contract; and (5)

---

[4] Joy v. Dep't of Labor & Indus., 170 Wn. App. 614, 629, 285 P.3d 187 (2012).
[5] State v. Olson, 126 Wn.2d 315, 323, 893 P.2d 629 (1995).
[6] Olson, 126 Wn.2d at 323.
[7] RAP 9.12.

American negligently caused his first back injury. In his reply brief, Char further alleged that American pressured his doctors to declare he reached maximum medical cure. Because Char did not properly raise these arguments in the trial court, we decline to consider them.[8]

Standard of Review for Summary Judgment

This court reviews a summary judgment order de novo.[9] Summary judgment is proper if, after viewing all of the pleadings, affidavits, and depositions in the light most favorable to the nonmoving party, the record shows no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law.[10]

The moving party bears the initial burden of showing an absence of any genuine issue of material fact.[11] Alternatively, a defendant can demonstrate that the plaintiff lacks competent evidence to support an essential element of the claim.[12] Once the defendant meets this burden, the burden shifts to the plaintiff "'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

---

[8] RAP 9.12; see Cowiche Canyon Conservancy v. Bosely, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); Sourakli v. Kyriakos, Inc., 144 Wn. App. 501, 509, 182 P.3d 985 (2008).

[9] Silverhawk, LLC v. KeyBank Nat'l Ass'n, 165 Wn. App. 258, 264, 268 P.3d 958 (2011).

[10] CR 56(c); Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

[11] Seybold v. Neu, 105 Wn. App. 666, 677, 19 P.3d 1068 (2001).

[12] Seybold, 105 Wn. App. at 676; Fisher v. Aldi Tire, Inc., 78 Wn. App. 902, 906, 902 P.2d 166 (1995); Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

trial.'"[13] The plaintiff may not simply rely on the allegations in the existing pleadings or on speculative and argumentative assertions that unresolved factual issues remain.[14] The plaintiff must respond with affidavits or other documents[15] setting forth specific facts to show that a genuine issue exists requiring a trial.[16]

Char alleged claims against American for negligence, unseaworthiness, and for reinstatement of maintenance and cure. Char contended that American negligently caused his neck and knee injury that he sustained while he was working on their ships and that the F/T *American Dynasty* was unseaworthy when Char injured his knee while working on it. Char also alleged a continuing entitlement to maintenance and cure for his injuries.

Negligence

The elements of a negligence claim are duty, breach, notice, and causation.[17] The only difference between a common law negligence claim and a negligence claim under the Jones Act[18] asserted by Char is the standard for causation. "The quantum of evidence necessary to support a finding of Jones Act negligence is less than that required for common law negligence and even

---

[13] Young, 112 Wn.2d at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

[14] Seybold, 105 Wn. App. at 676; Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

[15] CR 56(e).

[16] Seybold, 105 Wn. App. at 676.

[17] Ribitzki v. Canmar Reading & Bates, Ltd. P'ship, 111 F.3d 658, 662 (9th Cir. 1997).

[18] 46 U.S.C. § 30104.

the slightest negligence is sufficient to sustain a finding of liability."[19] Although the duty to provide a safe ship is broad, "[t]here must be some evidence from which the trier of fact can infer that the owner either knew, or in the exercise of due care, should have known of the unsafe condition."[20]

Char contends that American negligently caused his injuries. The parties agree that Char worked for American and that American owed him the duty of providing a safe ship. But American submitted the only evidence showing the causes of Char's injuries: (1) Char's own negligence or (2) normal ship movement. To defeat the summary judgment motion, Char needed to present competent evidence showing that American's negligence caused his injuries. Because he did not present any evidence to support this claim, the trial court properly dismissed it.

Seaworthiness

A shipowner has an absolute duty to maintain a seaworthy ship.[21] This means a ship is reasonably fit for its intended use.[22] To establish a claim for unseaworthiness, Char must show "(1) the warranty of seaworthiness extended to him and his duties; (2) his injury was caused by a piece of the ship's

---

[19] Havens v. F/T Polar Mist, 996 F.2d 215, 218 (9th Cir. 1993) (internal citation omitted).

[20] Havens, 996 F.2d at 218; see also Dempsey v. Mac Towing, Inc., 876 F.2d 1538, 1543 (11th Cir. 1989); Perry v. Morgan Guar. Trust Co., 528 F.2d 1378, 1379 (5th Cir. 1976).

[21] Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549, 80 S. Ct. 926, 4 L. Ed. 2d 941 (1960); Ribitzki, 111 F.3d at 664.

[22] Mitchell, 362 U.S. at 550; Ribitzki, 111 F.3d at 664.

equipment or an appurtenant appliance; (3) the equipment used was not reasonably fit for its intended use; and (4) the unseaworthy condition proximately caused his injuries."[23] He can prove his claim without showing American's actual or constructive knowledge of an unseaworthy condition.[24]

Char contends that the F/T *American Dynasty* was not seaworthy because he fell and injured his knees when he lost his balance due to an unanticipated motion caused by it shifting in bad weather. But American presented uncontroverted evidence showing that the vessel operated in normal sea conditions in moderate weather and was not slippery or otherwise unseaworthy. Char did not provide any contrary evidence about the weather conditions or show that the ship had faulty equipment. Therefore, the trial court properly dismissed this claim.

Maintenance and Cure

Finally, Char claims that American owes him additional maintenance and cure because he has not achieved maximum recovery from his injuries. A "shipowner's duty to pay maintenance and cure is so broad that it arises regardless of the shipowner's fault or negligence or the seaman's contributory fault."[25] If a shipowner decides to stop paying maintenance and cure to a seaman based on its determination that the seaman has reached maximum cure,

---

[23] Ribitzki, 111 F.3d at 664.

[24] Mitchell, 362 U.S. at 549; Ribitzki, 111 F.3d at 664.

[25] Dean v. Fishing Co. of Alaska, Inc., 177 Wn.2d 399, 408, 300 P.3d 815 (2013); Aguilar v. Standard Oil Co., 318 U.S. 724, 730-31, 63 S. Ct. 930, 87 L. Ed. 1107 (1943).

the seaman may seek to reinstate maintenance and cure.[26] A shipowner who refuses to reinstate maintenance and cure bears the burden of providing unequivocal evidence that the seaman has reached maximum cure.[27] "'"Maximum medical cure" is reached when the seaman recovers from the injury, the condition permanently stabilizes or cannot be improved further.'"[28]

American provided uncontroverted evidence that Char's doctors had all determined that Char needed no additional medical treatment they could provide that would improve his condition before American stopped paying maintenance and cure. Char did not submit any evidence contradicting the findings of these physicians. Without any contradicting evidence, the evidence provided by American unequivocally showed that all physicians had released Char from treatment to return to work. Therefore, the trial court properly dismissed this claim.

---

[26] Dean, 177 Wn.2d at 409-10.

[27] Dean, 177 Wn.2d at 410 (citing Johnson v. Marlin Drilling Co., 893 F.2d 77, 79 (5th Cir. 1990)).

[28] Dean, 177 Wn.2d at 406 (quoting McMillan v. Tug Jane A. Bouchard, 885 F. Supp. 452, 459 (E.D.N.Y. 1995)).

## Conclusion

Char has not demonstrated the existence of any genuine issue of material fact relevant to any of his claims. Nor has he shown that the trial court misapplied the law. Thus, we affirm.

_____ Leach, J.

WE CONCUR:

_____ Spearman, J.

_____ Becker, J.