## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| HISHM CHONAH, | ) | No. 76201-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| COASTAL VILLAGES POLLOCK, LLC, | ) | |
| and C/P NORTHERN HAWK, LLC, | ) | PUBLISHED OPINION |
| | ) | |
| Appellants. | ) | FILED: September 4, 2018 |
| | ) | |

MANN, A.C.J. — Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an unfair advantage by taking an inconsistent position. The purpose of judicial estoppel is to protect the integrity of the judicial process, not to benefit a party. Hishm Chonah was injured at sea while working for Coastal Villages Pollock, LLC and C/P Northern Hawk, LLC (Coastal Villages). After Chonah filed a Chapter 7 bankruptcy petition without listing his maritime claim, Coastal Villages asserted that his claim was barred by judicial estoppel. Because the trial court did not abuse its discretion concluding that judicial estoppel does not bar Chonah's claim, we affirm.

## FACTS

Hishm Chonah moved to the United States from Sudan in 2001, when he was approximately 27 years old. Chonah held a degree in accounting from a Sudanese university, and when he came to the United States he initially hoped to enter that field. But he needed to study English and send money to his family in Sudan, so he started working in the fishing industry instead. In 2002, Chonah began working on fish processing ships in Alaska for Coastal Villages.

In January 2013, Chonah was injured at sea while working as a crewmember on the vessel Northern Hawk. The Jones Act provides seamen injured in the course of employment the right to sue employers for personal injury. 46 U.S.C. § 30104. Over the next three years, Chonah underwent four surgeries on his neck and back. During this time, Coastal Villages paid maintenance to Chonah under the Jones Act, initially at $25 per day and then $45 per day.[1] Chonah was unable to meet his living expenses on this income and he fell into debt.

In December 2013, after Chonah's bank account was frozen, he sought advice from Brad Puffpaff, an attorney who had been practicing for less than a year. Puffpaff recommended that Chonah declare bankruptcy. Chonah said he didn't understand what that meant, and Puffpaff explained "you won't owe any money and you would get a new start." Chonah told Puffpaff about his accident, surgeries, and the maintenance payments from Coastal Villages. Chonah explained that he couldn't return to fishing

---

[1] "Maintenance" under the Jones Act is a per diem living allowance for food and lodging. Dean v. Fishing Co. of Alaska, Inc., 177 Wn.2d 399, 406, 300 P.3d 815 (2013) (citing Calmar S S Corp v. Taylor, 303 U.S. 525, 58 S. Ct. 651, 82 L. Ed. 993 (1938). The duty to pay maintenance "continues until the seaman . . . reaches the point of maximum medical recovery." Dean, 177 Wn.2d at 406 (quoting 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6-28, at 393 (4th ed. 2004).

because he had spacers put into his neck and it would be too dangerous. He said that when his surgeries were completed he expected Coastal Villages would stop paying maintenance and offer payment for lost time and loss of future wages, but he didn't think he needed a lawyer to help with this because "my employer was treating me OK" and "using a lawyer would slow everything down." However, Chonah expressed concern that Coastal Villages might offer too little. Puffpaff told Chonah he didn't do that kind of legal work, but could provide a recommendation if Chonah decided he needed an attorney in the future. Puffpaff then gave Chonah a form to take home and fill out in preparation for the bankruptcy filing. But Chonah's English was not good enough to understand the questions, so Chonah returned to Puffpaff's office and Puffpaff completed the form for him.

On February 18, 2014, Chonah met with Anissa Olson and Becky Buchan of Polaris Group LTD, an insurance claims adjusting firm retained by Coastal Villages. Tatyanna Drakulovic of Coastal Villages was also present at the meeting. Olson was aware that Chonah was going through a period of financial hardship. She offered Chonah $1,500 as an advance on a future settlement, but Chonah refused it. According to Olson, Chonah said he didn't take the offer because he planned to file for bankruptcy and he needed to make sure his account showed no income for a year. According to Chonah, he didn't accept the advance because he didn't want to sign for something he wasn't sure about.

On April 21, 2014, Puffpaff filed Chonah's Chapter 7 bankruptcy petition. In the petition, Puffpaff inaccurately characterized Chonah's maintenance payments under the

-3-

Jones Act as "L&I Workman's Compensation." The bankruptcy petition did not disclose Chonah's potential Jones Act claim against Coastal Villages.[2]

On May 27, 2014, Puffpaff accompanied Chonah to the Chapter 7 meeting of creditors. In response to questions from the bankruptcy trustee, Chonah verbally affirmed that his bankruptcy documents listed all of his assets, debts, and creditors, that there were no errors or omissions, and that he did not have a personal injury claim against anyone. Puffpaff did not correct Chonah's responses. The bankruptcy trustee reported that there was "no property available for distribution from the estate over and above that exempted by law." On July 30, 2014, Chonah was granted a Chapter 7 discharge from the U.S. Bankruptcy Court.

Coastal Villages learned of Chonah's bankruptcy discharge and summoned him to another meeting. On September 28, 2015, Chonah met again with Olson, Buchan, and Drakulovic. They offered Chonah $40,000 to settle his claim, and encouraged him to contact his bankruptcy attorney immediately. Chonah refused the settlement offer and contacted a maritime attorney. Chonah then spoke with Puffpaff, who told him it would be possible to reopen the bankruptcy case. Chonah subsequently retained a new bankruptcy attorney to address the problem.

On January 4, 2016, the bankruptcy trustee moved to reopen Chonah's Chapter 7 bankruptcy case based on "information concerning the existence of additional assets

---

[2] Puffpaff's decision not to list Chonah's claim on the bankruptcy schedule likely resulted from this misunderstanding. Under Washington's Industrial Insurance Act (IIA), an injured employee who qualifies for workers' compensation benefits cannot sue their employers for personal injury. RCW 51.32.010; Entila v. Cook, 187 Wn.2d 480, 484, 386 P.3d 1099 (2017). In addition, disability income is exempt under the bankruptcy code. 11 U.S.C. § 522(d). Thus, it would not be necessary to list an L&I claim as an asset on a bankruptcy petition. The same is not true for Jones Act claims, which are not governed by the IIA and must be disclosed as assets in bankruptcy.

requiring further administration." On January 13, 2016, Chonah filed his Jones Act claim against Coastal Villages.

On April 18, 2016, Chonah filed a notice and motion to convert his bankruptcy from Chapter 7 to Chapter 13. Chonah expressly asked the bankruptcy court not to grant the motion "without an express finding that his failure to list the maritime claim was inadvertent, because he is concerned that the defendant in the King County maritime claim action may assert judicial estoppel." Chonah's new bankruptcy attorney argued that Puffpaff was an inexperienced lawyer who prejudiced Chonah by filing under Chapter 7. He explained that under Chapter 7, the interim trustee's first duty was to collect and reduce the property of the estate as expeditiously as possible to pay Chonah's debts, potentially ignoring Chonah's interest in the outcome of the litigation and leaving Chonah vulnerable to losing his interim maintenance payments. In contrast, he explained, under Chapter 13, the Jones Act claim remained a part of the bankruptcy estate, leaving Chonah time to manage the claim against Coastal Villages to ensure a recovery that would protect his interests as well as the creditors, protect his maintenance income during the pendency of the claim, and then allow the trustee to pay the full $44,000 debt once the claim was resolved.

On May 25, 2016, the bankruptcy court granted Chonah's unopposed motion, including an express finding "that the Debtor did not intentionally conceal his maritime claim in his original filing." Chonah then submitted an amended Chapter 13 bankruptcy

filing, which stated that he had an employment injury claim for "loss of maritime wages, including future wages" in the amount of $800,000.

On September 29, 2016, Coastal Villages filed a motion for summary judgment seeking to bar Chonah's suit on the ground that judicial estoppel precluded the action. At oral argument, the trial court asked whether Chonah's debts had been discharged in Chapter 7 or remained alive under Chapter 13. Counsel for Chonah explained that even though Chonah had initially received a general discharge of debts under Chapter 7, the creditors' claims remained alive:

> [T]he reason the case was reopened was so the bankruptcy trustee could administer the estate for the benefit of the creditors. So if there's a judgment in this case, if Your Honor doesn't rule and the case doesn't stop, and there's eventually a judgment or a settlement, that money is going to go to the standing trustee, the Chapter 13 trustee, for disbursement. And the creditors are going to get paid – assuming the sum is more than $80,000, they are going to get paid 100 cents on the dollar.

On November 11, 2016, the trial court denied Coastal Villages' motion for summary judgment, reasoning as follows:

> In the present case, this court cannot say that it would be inequitable to allow the plaintiff's case to proceed. Doing so does not serve to confer upon him any unfair advantage nor to impose any unfair detriment upon the defendant. Looking at what has gone before and focusing on the interest of the court in protecting the integrity of the judicial process, it must be observed that language and cultural barriers, quirks of maritime and bankruptcy law, and questionable legal advice all combine to ameliorate the plaintiff's actions to a degree that shifts the equities.

On December 27, Coastal Villages filed a motion for discretionary review with this court. Chonah did not oppose the motion. In April 7, 2017, the court commissioner granted the motion for discretionary review. This appeal followed.

## DISCUSSION

Coastal Villages argues that the trial court erred in declining to apply the doctrine of judicial estoppel to bar Chonah's lawsuit. We disagree.

*Standard of Review*

"An appellate court reviewing a summary judgment places itself in the position of the trial court and considers the facts in a light most favorable to the nonmoving party." Cunningham v. Reliable Concrete Pumping, Inc., 126 Wn. App. 222, 227, 108 P.3d 147 (2005). This court reviews a trial court's decision regarding the application of judicial estoppel for abuse of discretion. Miller v. Campbell, 164 Wn.2d 529, 536, 192 P.3d 352 (2008) (citing Cunningham, 126 Wn. App. at 227)). "A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds." Skinner v. Holgate, 141 Wn. App. 840, 849, 173 P.3d 300 (2007) (quoting State v. Perrett, 86 Wn. App. 312, 319, 936 P.2d 426 (1997)). "A trial court's decision is manifestly unreasonable only if it is outside the range of acceptable choices, given the facts and the applicable legal standard." In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

*Application of Core Factors*

"Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position." Bartley-Williams v. Kendall, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006) (citing Cunningham, 126 Wn. App. at 225). "There are two primary purposes behind the doctrine: preservation of respect for judicial proceedings and avoidance of inconsistency, duplicity, and waste of time." Anfinson v. FedEx Ground Package

System, Inc., 174 Wn.2d 851, 861, 281 P.3d 289 (2012). "It is intended to protect the integrity of the courts but is not designed to protect litigants." Arp v. Riley, 192 Wn. App. 85, 91, 366 P.3d 946 (2015) (citing Ah Quin v. County of Kauai Dep't of Transp., 733 F.3d 267, 271 (9th Cir. 2013)).

"Three 'core,' nonexhaustive factors guide a trial court's determination of whether to apply judicial estoppel: (1) whether the party's later position is clearly inconsistent with its earlier position, (2) whether acceptance of the later inconsistent position would create the perception that either the first or the second court was misled, and (3) whether the assertion of the inconsistent position would create an unfair advantage for the asserting party or an unfair detriment to the opposing party." Taylor v. Bell, 185 Wn. App. 270, 282, 340 P.3d 951 (2014) (citing Anfinson, 174 Wn.2d at 861).

Coastal Villages first argues that the trial court impermissibly considered "language and cultural barriers, quirks of maritime and bankruptcy law, and questionable legal advice" as additional factors in its judicial estoppel analysis. This argument is not persuasive. It is settled law that the three core factors "are not an 'exhaustive formula' and '[a]dditional considerations' may guide a court's decision." Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 539, 160 P.3d 13 (2007) (quoting New Hampshire v. Maine, 532 U.S. 742, 751, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)). The trial court's analysis was entirely appropriate in light of the flexible, fact-based nature of the equitable doctrine of judicial estoppel.

Coastal Villages next argues that it is an abuse of discretion to deny summary judgment based on judicial estoppel where, as here, all three core factors are present. Chonah does not dispute Coastal Villages' assertion that all three core factors are

-8-

present in his case. Rather, Chonah contends that the trial court properly exercised its discretion to consider additional equitable considerations in declining to bar his suit based on judicial estoppel.

We disagree that all three core factors are met. Our analysis begins with the first factor: whether Chonah's later position is clearly inconsistent with his first position. "The Bankruptcy Code and court rules 'impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims.'" Cunningham, 126 Wn. App. at 229-30 (quoting In re Coastal Plains, Inc., 179 F.3d 197, 207-08 (5th Cir. 1999)). "Courts will generally apply judicial estoppel to debtors who fail to list a potential legal claim among their assets during the bankruptcy proceedings but then pursue the claim after the bankruptcy discharge." Skinner, 141 Wn. App. at 848 (citing Bartley-Williams v. Kendall, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006)). "The failure to disclose a potential claim in bankruptcy is considered inconsistent with a later attempt to pursue such a claim outside the bankruptcy proceedings." Miller, 164 Wn.2d at 540. Coastal Villages argues that the first factor is met because Chonah failed to disclose his Jones Act claim in his initial Chapter 7 bankruptcy petition, received a discharge of his debts, and is now pursuing his previously undisclosed claim against Coastal Villages. However, upon realizing the potential consequences of Puffpaff's error in failing to disclose the claim, Chonah immediately moved to convert his bankruptcy from Chapter 7 to Chapter 13. He then submitted an amended Chapter 13 bankruptcy filing that disclosed his Jones Act claim against Coastal Villages. Therefore, at the time Coastal Villages moved for summary judgment, the bankruptcy court was fully apprised of Chonah's Jones Act claim. This is the same position Chonah

advanced at the trial court. There is no inconsistent position. The first factor is not present.

The second factor is whether judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Coastal Villages asserts that this factor is satisfied because Chonah failed to disclose his potential Jones Act claim and the bankruptcy court accepted that position and discharged his debts. But this argument ignores that Chonah's bankruptcy case was reopened, thereby creating an opportunity for Chonah's creditors to recover in full. We reject Coastal Villages' bid to turn the judicial integrity doctrine into a game of tag where a position, once advanced, can never be retracted. The bankruptcy court, acting pursuant to its own authority, reopened Chonah's case and addressed the problem caused by Puffpaff's error in the original filing. The second factor is not present.

The third factor is whether the assertion of the inconsistent position would create an unfair advantage for the asserting party or an unfair detriment to the opposing party. Coastal Villages argues that this factor is met because Chonah failed to list his Jones Act claim and then gained an unfair advantage by receiving a complete discharge of his debts, notwithstanding the subsequent reopening of his bankruptcy case. But the trial court's ruling allowing Chonah's claim to go forward makes a settlement or judgment available to pay his creditors in bankruptcy court. In contrast, Coastal Villages' position would deny relief to those creditors and allow Coastal Villages to avoid payment. Such a result would bestow a valuable benefit to Coastal Villages while doing nothing to advance the integrity of the judicial process. "Judicial estoppel does not exist to create

a windfall for the proponent party." <u>Gosney v. Fireman's Fund Insurance Company</u>, 3 Wn. App. 2d 828, 884, 419 P.3d 447 (2018) (citing <u>Arkison</u>, 160 Wn.2d at 540).

The trial court concluded, and we agree, that allowing Chonah's case to proceed "does not serve to confer upon him any unfair advantage nor to impose any unfair detriment upon the defendant." The third factor is not present.

<em><u>Cunningham</u> Does Not Control</em>

Coastal Villages relies heavily on our decision in <u>Cunningham</u> to argue that the trial court erred in declining to apply judicial estoppel to dismiss Chonah's case. We disagree. On the record before us, <u>Cunningham</u> does not compel a different result.

First, Coastal Villages argues that Chonah's intent in failing to disclose his Jones Act claim on his original bankruptcy filing is irrelevant to the judicial estoppel analysis. In <u>Cunningham</u>, Cunningham filed a bankruptcy petition without disclosing his personal injury claim against his former employer. 126 Wn. App. at 225-26. The trial court concluded that judicial estoppel barred the action, and granted the employer's motion for summary judgment. <u>Cunningham</u>, 126 Wn. App. at 226. Cunningham argued that the trial court erred in dismissing his claim because judicial estoppel is only appropriate where the debtor sought to intentionally mislead the bankruptcy court, and he lacked the required manipulative intent. <u>Cunningham</u>, 126 Wn. App. at 233. This court rejected Cunningham's argument, noting that "intent to mislead is not an element of judicial estoppel" and "there is nothing in the record to support Cunningham's assertion that he omitted the claim by mistake." <u>Cunningham</u>, 126 Wn. App. at 234.

We agree that intent is not a required factor in the judicial estoppel analysis and it is not an abuse of discretion to refuse to consider it. However, <u>Cunningham</u> does not

-11-

support the proposition that courts are barred from considering facts relevant to a debtor's intent in the exercise of their discretion. "Application of the doctrine may be inappropriate 'when a party's prior position was based on inadvertence or mistake.'" Arkison, 160 Wn.2d at 539 (quoting New Hampshire, 532 U.S. at 753). "'[A] party's nondisclosure of a claim in bankruptcy does not automatically lead to estoppel in a future suit,' especially where a party lacks knowledge or has no motive to conceal the claims.'" Gosney, 3 Wn. App. 2d at 881 (alteration in original) (internal quotation marks omitted) (quoting Arp v. Riley, 192 Wn. App. 85, 92-93, 366 P.3d 946 (2015)). "[W]hile a court need not make a finding of manipulative intent, usually this has been implied in cases where a court applies judicial estoppel." Arp, 192 Wn. App. at 100.

Here, the bankruptcy court's order converting Chonah's bankruptcy from Chapter 7 to Chapter 13 included an express finding "that the Debtor did not intentionally conceal his maritime claim in his original filing." We recognize this finding as a matter of comity. "The comity doctrine allows a court, acting in its discretion, to give effect to the law and resulting order of another jurisdiction out of deference and respect, considering the interests of each jurisdiction." First Bank of Lincoln v. Tuschoff, 193 Wn. App. 413, 426, 375 P.3d 687 (2016) (citing Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 160-61, 744 P.2d 1032, 750 P.2d 254 (1987). Intent was a question of fact for the bankruptcy, and its ruling is dispositive.

Moreover, there is ample evidence in the record that Chonah's failure to list his Jones Act claim on the Chapter 7 bankruptcy petition was the result of inadvertence or mistake, rather than deliberate or intentional manipulation. Chonah, a Sudanese immigrant who was not a native English speaker, openly discussed his accident,

surgeries, and maintenance payments with Puffpaff. It appears that Puffpaff misunderstood the nature of Chonah's maritime claim and mistakenly believed he did not need to report it. Upon discovering the judicial estoppel issue, Chonah immediately took action to change his bankruptcy from Chapter 7 to Chapter 13, thereby reopening the case and providing an opportunity for his creditors to be paid in full. Unlike Cunningham, the record contains ample evidence that the omission was the result of inadvertence or mistake, not manipulative intent.

Next, Coastal Villages argues that under Cunningham, the re-opening of Chonah's bankruptcy is not relevant because "[t]he courts have made clear that the failure to schedule claims about which the debtor had knowledge 'is sufficient acceptance to provide a basis for judicial estoppel, even if the discharge is later vacated.'" Cunningham, 126 Wn. App. at 232. We agree that a court may properly apply judicial estoppel where it is equitable to do so, even where the debtor belatedly attempts to remedy the original omission. But Cunningham does not support the proposition that a court necessarily abuses its discretion by weighing the equities and declining to apply judicial estoppel where the discharge was later vacated.

Coastal Villages, again citing Cunningham, also argues that the trial court erred in concluding that "questionable legal advice" was an ameliorating factor. Cunningham argued that he lacked manipulative intent because his attorney failed to timely amend the bankruptcy schedules. This court rejected that argument, stating that "once a party has designated an attorney to represent him in regard to a particular matter, the court and the other parties in an action are entitled to rely upon that authority." Cunningham,

126 Wn. App. at 234-35 (citing <u>Haller v. Wallis</u>, 89 Wn.2d 539, 573 P.2d 1302 (1978)).[3] Although this is a valid reason for a court to apply judicial estoppel to bar an action, it does not require courts to rigidly apply judicial estoppel in every situation in which an attorney commits an egregious oversight. As <u>Cunningham</u> stated, "[b]laming the attorney does nothing to avoid the application of judicial estoppel <u>on this record</u>."[4]

In sum, the trial court's decision to deny Coastal Villages' motion for summary judgment based on judicial estoppel was well within its discretion under the facts of this case. Neither case law nor policy considerations compel a different result.

Affirmed.

_Mann, A.C.J._

WE CONCUR:

_Andrus, J._                    _Dwyer, J._

---

[3] <u>Haller</u> is not dispositive. The issue in <u>Haller</u> was whether the trial court abused its discretion by refusing to vacate a settlement of a child's personal injury action judgment in the absence of fraud, collusion, or irregularity, and whether the mother's absence from the proceeding prejudiced the minor's case. Judicial estoppel was not at issue.

[4] (Emphasis added.)